**Perry KEETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69639.**

Court of Criminal Appeals of Texas, En Banc.

April 6, 1988.

William L. Smith, Corsicana, for appellant.

Patrick C. Batchelor, Dist. Atty., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION FOLLOWING ABATEMENT

MILLER, Judge.

Appeal was taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03. After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A.C.C.P. Punishment was assessed at death. We issued one opinion reforming the punishment in the judgment to life and affirming the case, and then granted rehearing on our own motion and abated the appeal for a trial court hearing concerning the prosecutor's use of peremptory strikes. *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App.1987). The trial court conducted a hearing and returned findings of fact and conclusions of law to this Court. The transcription of the hearing, however, was not forwarded. We issued an unpublished order on May 27, 1987, requesting that the notes taken during the hearing, if any, be transcribed and sent to this Court.

The record of the hearing has been sent as requested. Thus, we are now equipped to dispose of appellant's fifth point of error, wherein he claims that the trial court erred in allowing the prosecutor to exercise peremptory strikes against members of appellant's race in violation of appellant's constitutional rights as set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), (hereinafter cited as *Batson*).

As stated in *Keeton,* supra at 65, once the defendant has established a prima facie case of discrimination regarding the State's use of its peremptory strikes, the burden shifts to the State to come forward with a neutral explanation for the challenges. The trial court then has the duty to consider the evidence and determine whether the explanations are sufficient.

## PROCEEDINGS IN THE TRIAL COURT

In the case before us, the State exercised three peremptory strikes against members

of appellant's race. One black person did serve on the jury. We will consider the State's explanation regarding each strike.

William Littleton was the first prospective juror struck by the State. After appellant's counsel objected to the prosecutor's use of a peremptory strike against Littleton, the following testimony was given by the prosecutor:[1]

"I am Pat Batchelor. I'm Criminal District Attorney of Navarro County, Texas. I am representing the State in this cause number against Perry Keeton.

I have just examined William Alexander Littleton in this case and have exercised a preemptory [sic] strike against Mr. Littleton. The reasons that I did exercise that strike against Mr. William Alexander Littleton was that on the 12th day of October, 1974, in Cause No. 17,-099, in the County Court of Navarro County, Texas, Mr. Littleton was convicted of transporting whiskey and wine in a dry area. He plead guilty to that and was found [guilty] by the Court of that offense.

Also in Cause No. 17,438 on December the 17th, 1975, this prospective venireman, Mr. William Alexander Littleton, was convicted of sale of whiskey in a dry area in Cause No. 17,438.

Also on December the 17th, 1975, this prospective venireman, Mr. William A. Littleton, was convicted of sale of whiskey in cause No. 17,437 in the County Court of Navarro County, Texas.

I exercised my right to preemptorily [sic] challenge Mr. Littleton based solely upon these prior misdemeanor convictions and run-ins with the law and did not

exercise that challenge because Mr. Littleton was of any particular race, color or creed."

At the *Batson* hearing, the prosecutor stated that he used a peremptory strike against Littleton because:

"[I]t was my feeling that because of these prior convictions and contacts at and by my office, he could not be fair to the State of Texas."

The second prospective juror struck by the State was Jeanetta Chaney. The record of her voir dire examination revealed that Chaney was well acquainted with appellant and his mother. She indicated that she would have trouble making a decision concerning the death penalty in this case because appellant was related to her daughter and was "kind of like in the family."

After the prosecutor exercised a peremptory strike against Chaney, appellant's counsel objected. [See footnote 1, supra.] The prosecutor again was sworn in as a witness and testified as follows:

"I am Pat Batchelor. I'm the Criminal District Attorney in Navarro County Texas. I will be representing the State in the case of 'The State of Texas versus Perry Keeton.'

I have examined the prospective venireperson Jenetta [sic] Chaney and I did exercise a preemptory [sic] challenge on behalf of the State. The reason that I exercised that preemptory [sic] challenge was because of her knowledge of and relationship with the family of the Defendant and the statement that she felt like that the Defendant was on a level with one of her sons and that they were

---

1. The record shows that during the voir dire portion of the trial, appellant's counsel objected to each of the State's peremptory strikes *as* they were leveled at members of the black race. The prosecutor took the stand subsequent to each *Batson* objection and presented testimony as to why the prospective jurors were struck. The prosecutor's reason for so doing is not clear, but we may assume that this was a laudable attempt to pay homage to *Batson,* supra, which was delivered two weeks before the instant trial and generated confusion over the procedures to fol-

low. See Seymore and Thielman, *Batson v. Kentucky: A New Weapon for the Defense,* Voice for the Defense, October 1987, 21–24. There was no *Batson* hearing as we now conceive it held during the trial; rather, the hearing took place after the order of this Court, mentioned at the beginning of this opinion, issued. Since we must examine the entire record when passing upon the propriety of a trial court's rejection of a *Batson* objection, the prosecutor's trial testimony is included in this discussion.

related in some fashion, that I was unable to ascertain the exact degree of relationship, but she felt it was somewhat of a close relationship from the impression that I got.

The reason that I exercised a preemptory [sic] challenge is I felt that this would cause her undue stress to serve on this jury and have to make a decision of life or death with somebody that she obviously was this close with and had absolutely nothing to do with the fact that she was black and I did not strike her because of her race, color or creed."

During the *Batson* hearing, the prosecutor stated that this prospective juror was struck because:

"... the Defendant had too close a tie to the—that the prospective venireman had too close a relationship to the Defendant to be completely fair to the State of Texas and the people of Navarro County in making a decision in this case."

Tommy Crosby was the third prospective juror struck. The record of the voir dire examination shows the following:

Q. [By the prosecutor] In capital cases, Capital Murder cases, the State's burden of proof is beyond a reasonable doubt. That's the same burden—It's a relatively high burden. It's the highest that we have in the criminal just [sic] system. But it's also the same burden that we have in a speeding ticket case or misdemeanor; it's no higher.

Do you feel like if you were sitting on a Capital Murder case where a person's life was involved that you would require the State to bring you more evidence and carry forth a higher burden than you would in, say, a speeding ticket case?

A. Definitely.

．　　．　　．　　．　　．

Q. [By Appellant's attorney] ... Mr. Crosby, there's one aspect of what you and the District Attorney talked about that I would like to go into a little deeper with you, and that is—I believe that you told the District Attorney that due to the fact that this was a Capital Murder case that you would require a higher burden on the State than the burden of reasonable doubt. Am I right when I say that?

A. Yes, sir.

Later in the examination, the juror did indicate that he could follow the court's instructions with regard to the State's burden of proof.

After the State exercised its strike, appellant's counsel objected. The prosecutor took the stand [see footnote 1, supra] and stated:

"I am Pat Batchelor. I'm District Attorney in Navarro County, Texas. I am representing the State in this cause. I have just examined Tommy Crosby and exercised a preemptory [sic] challenge on behalf of the State of Mr. Crosby [sic] for the reason that Mr. Crosby vacilated [sic] a great deal on whether or not he could hold the State to no higher burden than the law required. When first asked he was fairly definite that he would hold the State to a higher burden even to the point of saying beyond a shadow of a doubt. This is the reason that I exercised that preemptory [sic] challenge. It had nothing to do with his race, color, creed, religious [sic] or national origin."

In explaining the use of a peremptory strike against Crosby during the *Batson* hearing, the prosecutor stated:

"The State did strike preemptorily [sic] the prospective venireman, Tommy J. Crosby ... for the reason that during his voir dire examination, he had stated numerous times that in this particular case he would have to hold the State to a higher burden of proof than he would in an ordinary case where the death penalty was not involved.

I felt like that we could have challenged Mr. Crosby for cause, but out of an over abundance of precaution—and since the State had not used all of its preemptory [sic] challenges—the State chose to exercise a preemptory [sic] challenge instead of challenging for cause because we felt Mr. Crosby could not be

fair because of his belief that he would have to hold the State to a higher burden of proof in this particular case."

After the hearing, the trial court filed findings of fact and conclusions of law which included the following:

1. The Court finds that the defendant, PERRY KEETON, is a member of a cognizable racial group.

2. The Court finds that the prosecutor exercised premptory [sic] challenges to remove from the venire members of the defendant's race.

3. The Court finds that the attorney for the defendant raised an inference of purposeful discrimination.

4. The Court finds that the prosecutor came forward with a neutral explanation for each of the premptory [sic] challenges of prospective jurors of the defendant's race.

5. The Court finds that the explanation given by the prosecutor in each case is completely credible.

6. The Court finds that the explanations given by the prosecutor in each case is [sic] completely sufficient as to content.

7. The Court finds that there was no purposeful discrimination by the prosecutor in the use of his premptory [sic] strikes whatsoever.

8. The defendant's objection to the prosecutor's premptory [sic] strikes is overruled.

In sum, the trial judge held that the prosecutor had not exercised peremptory challenges against black prospective jurors because of racial bias or prejudice.

The question we now face is whether the trial judge's findings are supported by the record. To answer this question we must necessarily examine both the trial court's role in making the appropriate determinations in a *Batson* hearing, and our role as an appellate court in reviewing those determinations.

### THE ROLE OF THE TRIAL JUDGE UNDER *BATSON*

■ We first note that the trial judge's role is slowly being defined by our sister states. Since the *Batson* decision calls for a new procedure not heretofore familiar to daily trial practice—that of demanding of a party the reasons for their exercise of peremptory strikes—most states are, as we are, plowing new ground. A few attempts to define the trial judge's role, however, have already been made, and to those we now turn.

In *State v. Antwine*, 743 S.W.2d 51 (Mo. 1987), the Missouri Supreme Court noted their understanding of the procedural route to be traveled in dealing with a challenge under *Batson*. The defendant must establish a prima facie case of discrimination in peremptory strike use which creates a presumption of discrimination that shifts the burden of production to the prosecution to come forth with a racially neutral explanation. If such an explanation is given, the defendant may attempt to show that such explanation is merely a pretextual one. Then, and most importantly for our purposes, they dealt with the difficulty of the trial judge's role:

> "The trial judge's task is extremely difficult. *One doubts that a prosecutor will admit that his decision to challenge a particular member of the venire was based on race. The court is left with determining from the totality of the circumstances whether an articulated neutral explanation is but an excuse for improper discrimination. Batson* thus requires the trial judge to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and nonverbal communication from each member of the venire and from the prosecutor himself.

\*   \*   \*   \*   \*   \*

And we believe that *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate "hunches" and past experience, so long as racial descrimination is not the motive. We do not, therefore, adopt the holding of Butler [*Butler v. State*, 731 S.W.2d 265, 269, 41 CrL 2081 (Mo CtApp 1987)] that only objectively

supportable explanations of its use of peremptory challenges survive a *Batson* challenge.

*We do not believe, however, that Batson is satisfied by "neutral explanations" which are no more than facially legitimate, reasonably specific and clear. Were facially neutral explanations sufficient without more, Batson would be meaningless. It would take little effort for prosecutors who are of such a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced Batson.*

\*　　\*　　\*　　\*　　\*　　\*

[W]e read *Batson* to require the trial judge to assess the entire milieu of the voir dire *objectively and subjectively.* The judge must consider his personal, lifetime experiences with voir dire, comparing his observations and assessments of veniremen with those explained by the State. In addition, he must consider both his personal experiences with the prosecutor and any evidence offered by a defendant to show a pattern or practice of a prosecutor using peremptory challenges in a racially discriminatory manner over the course of time. Other factors must be considered as circumstances demand.

Ultimately, however, the trial judge must focus all of the information and intuitive perceptions he has gathered to determine whether the prosecutor's use of his peremptory challenges proceeds from a racially discriminatory motive.

(743 S.W.2d at 64, 65)

(emphasis supplied)

\*　　\*　　\*　　\*　　\*　　\*

*Slappy v. State,* 503 So.2d 350 (Fla.Dist. Ct.App.1987), was one of the first post–*Batson* cases to focus on the trial judge's responsibility with respect to the explanations given by the prosecutor to rebut the presumption of his use of racially motivated peremptory strikes. After an exhaustive examination of California's handling of the issue under their state constitution, the Florida court noted that California's analysis and holdings, that prosecutor's explanations were insufficient under the facts of the four cases discussed, had the effect of giving meaning to the requirements of *Batson.* Then a five part analysis, sometimes misnomered a test, was announced:

After a presumption arises that a party has used its peremptory challenges to exclude prospective jurors on the basis of race, the offending party must articulate "legitimate reasons" which are "clear and reasonably specific" and which are "related to the particular case to be tried." *The following will weigh heavily against the legitimacy of any race-neutral explanation:*

1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically;

2) no examination or only a perfunctory examination of the challenged juror;

3) disparate examination of the challenged juror, i.e., questioning challenged venireperson so as to evoke a certain response without asking the same question of other panel members;

4) the reason given for the challenge is unrelated to the facts of the case; and

5) disparate treatment where there is no difference between responses given and unchallenged venirepersons.

The error in this case, as it was in [*People v.*] *Hall,* [35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854 (1983) ] is that the trial court apparently considered itself bound to accept all of the prosecutor's explanations at face value. That view, said the California Supreme Court, would constitute an abdication of obligations imposed by the constitution. *Hall,* 35 Cal.3d at 169, 197 Cal.Rptr. at 76, 672 P.2d at 858–59.

At the time of trial the trial judge was certainly without guidance in Florida or federal law on the precise question. *We*

*hold now that is not sufficient that a prosecutor's explanations, in meeting the presumption that the peremptory challenge is being abused, are facially race-neutral. The trial court must further evaluate the proffered explanations in light of the standards we recognize here, other circumstances of the case, and the judges' knowledge of trial tactics* in order to make a reasoned determination that the prosecutor's facially innocuous explanations are not contrived to avoid admitting acts of group discrimination. *Slappy v. Florida,* 503 So.2d 350 (Fla.App.3 Dist.1987).

(emphasis supplied and citations omitted)

By far, the most exhaustive attempt to analyze the Batson decision and give both lower and appellate courts guidance in implementing its procedure was done by the Alabama Supreme Court in *Ex Parte Branch,* 526 So.2d 609 (Ala.1987). The Alabama Supreme Court, having granted certiorari to the Alabama Court of Criminal Appeals, remanded the *Branch* case for a *Batson* hearing in the trial court. In an thirty-plus page opinion, the Court completed what must be the most comprehensive survey of State law dealing with *Batson* -type issues in formulating specific guidelines for trial and appellate courts. Concerning the general guidelines for trial courts, the Alabama Supreme Court began by paraphrasing the holding in *Batson* that the determination of whether there is a prima facie case must be made by considering "all relevant circumstances" which could lead to an inference to discrimination. Then the Court stated:

The following are *illustrative* of the types of *evidence* that can be used to *raise the inference of discrimination:*

1. Evidence that the 'jurors in question share[d] only this one characteristic—their membership in the group—and that in all other respects they [were] as heterogeneous as the community as a whole.' For instance, 'it may be significant that the persons challenged, although all black, include

both men and women and are a variety of ages, occupations, and social or economic conditions,' indicating that race was the deciding factor.

2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors.

3. The past conduct of the state's attorney in using peremptory challenges to strike all blacks from the jury venire.

4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire.

5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions.

6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged.

7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors.

8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury.

9. The state used peremptory challenges to dismiss all or most black jurors.

After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. The state then has the burden of articulating a clear, specific, and legitimate reason for the challenge which relates to the particular case

to be tried, and which is nondiscriminatory. However, this showing need not rise to the level of a challenge for cause. In addition to a clear, specific, and plausible nondiscriminatory explanation of a specific characteristic that affected the decision to challenge, the following are *illustrative* of the types of *evidence* that can be used to *overcome the presumption of discrimination and show neutrality:*

1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.

2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the venire.

*Batson* makes it clear, however, that "[t]he State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result." Furthermore, intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination. Finally, a prosecutor cannot overcome the presumption "merely by denying any discriminatory motive or 'affirming his good faith in individual selections.'"

(emphasis supplied and citations omitted)

Echoing, without citation, the procedure outlined by the Missouri Supreme Court in *Antwine*, supra, the Alabama Supreme Court went on:

"Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. The following are *illustrative* of the types of *evidence* that can be used to *show sham or pretext:*

1. The reasons given are not related to the facts of the case.

2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions.

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck.

4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors.

5. The prosecutor, having 6 peremptory challenges, the prosecutor used 2 to remove the only 2 blacks remaining on the venire.

6. "[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically." For instance, an assumption that teachers as a class are too liberal, without any specific questions having been directed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.

*The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination.* This evaluation by the trial judge is *necessary because* it is possible that *an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror.*

(emphasis supplied and citations omitted)

We approve of the conceptual analysis of the proceedings in the trial court employed by the Supreme Courts of Alabama, Florida and Missouri, and find them in harmony with, though considerably more elaborative

than, our analysis in *Keeton,* supra.[2]

## THE ROLE OF THE APPELLATE COURT

■ The question of what role the appellate court should play in reviewing the proceedings involving a *Batson* challenge, and what standard of review should be employed, has also been discussed (albeit sometimes cursorily) by other states.

In *Antwine,* supra, the Missouri Supreme Court was somewhat cursory. In reviewing the determination of the Missouri trial judge that the defendant did not establish a prima facie case of racial descrimination, the Missouri Supreme Court reviewed all of the voir dire and the prosecutor's explanations for the use of his strikes against blacks and concluded that the trial court's ruling was not "clearly erroneous".

The Supreme Court of Indiana, in *Stamps v. State,* 515 N.E.2d 507 (Ind.1987), has carried over the standard of appellate review used previously to determine error in voir dire, that of "manifest abuse of discretion and denial of a fair trial", to decide if the trial judge correctly found no purposeful discrimination.

The Alabama Court of Criminal Appeals, in reviewing claimed *Batson* error in *Bryant v. State,* 516 So.2d 938 (Ala.Cr. App.1987), seemingly re-determined that the reason given by the prosecutor, that the stricken venireman had written bad checks in the past, was clearly race neutral.

The Arizona Court of Appeals in *State v. Tubbs,* 155 Ariz. 533, 747 P.2d 1232 (App. 1987), when dealing with the first review of a prosecutor's racially neutral explanation for striking certain blacks, began by stating the obvious:

"Courts have had a difficult time determining whether the reasons given by the prosecutor are the true reasons or fictitious reasons given for the purpose of masking discrimination.

Citing with approval the five part test set forth in *Slappy,* supra, discussed infra, the Court went on to say:

In this case, the prosecutor stated that he struck the only black member on the panel because he did not like the potential juror's eye contact and because he thought that the juror and the defendant both worked for the City of Phoenix Sanitation Department. The prosecutor further stated that he struck a white juror for the same reason, i.e., that he did not like that juror's eye contact.

While it is true that an elusive, intangible explanation for exclusion might not qualify as racially neutral, such is not the case when the explanation is coupled with an objectively verifiable reason. We are not asked to decide whether lack of eye contact alone is sufficient for a prosecutor to exclude the only black juror on the panel. The lack of eye contact coupled with the possibility that, at one time, defendant and the juror worked for the same employer is racially neutral and sufficient to support exclusion. See *State v. Holder,* [155] Ariz. [83], 745 P.2d 141 (1987).

If defendant is claiming the prosecutor was not being truthful in his responses, we note that the United States Supreme Court has stated that, since the findings of the trial judge largely will turn on an evaluation of credibility, appellate courts should give these findings "great deference." *Batson v. Kentucky,* 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21.

\* \* \* \* \* \*

The Alabama Supreme Court in *Branch,* supra, elucidated what they believe the role of an appellate court to be in reviewing a trial judge's decisions after a *Batson* -type challenge.

What is the scope of review on appeal from a finding by the trial judge that the state has given a satisfactory neutral

---

**2.** Note also the analysis and results stemming from challenges to the State's use of voir dire strikes in *People v. Hall,* 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854 (1983); *People v.* *Trevino,* 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719 (1985); and *People v. Turner,* 42 Cal.3d 711, 230 Cal.Rptr. 656, 726 P.2d 102 (1986) (post *Batson*).

explanation? This, too, is a question of first impression.

\* \* \* \* \* \*

We believe that the Court of Criminal Appeals correctly held that "[w]e may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." We realize that the trial court and the Court of Criminal Appeals were reviewing the requirements of *Batson* with little guidance on how a trial judge should discharge his responsibility when a defendant raises a *Batson* objection. We have the benefit of several cases decided in other jurisdictions, which may or may not have been called to the attention of those courts. We also have benefitted from some reviews of *Batson* that have been made in legal publications. We believe that the guidelines that we set out in this opinion will not only aid the trial court in this case, but other courts faced with a *Batson* or [similar] challenge.

In adopting our own standard for review, we reject Alabama's "clearly erroneous" standard, which is the federal standard for reviewing findings of fact. See Rule 52(a), Federal Rules of Civil Procedure. Nor do we adopt Indiana's abuse of discretion standard. We believe that our focus, as well as that of the trial judge, should be on whether purposeful discrimination was established. We will of course consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal.

### THE CASE AT BAR

■ Applying this standard to the facts at bar, we find that the trial court's findings were supported by the record. During their voir dire examinations, both Littleton and Chaney evidenced a potential to be biased against the State: Littleton be-

cause of prior misdemeanor convictions prosecuted by the State's attorney and Chaney because of a close relationship to appellant and his family. The prosecutor stated during trial that these bases for potential bias were the reasons for the strikes. At the *Batson* hearing, the prosecutor again stated that he believed neither prospective juror could be fair: Littleton because of the prior convictions and Chaney because of her association with appellant's family. Based upon this record, we perceive no error in the trial court's finding of no purposeful discrimination in the State's use of peremptory challenges against Littleton and Chaney.

The record also shows that the third juror, Crosby, may have held the State to a higher standard of proof. The prosecutor stated during trial and at the *Batson* hearing that this was the basis for the strike. The use of a peremptory strike against this prospective juror was understandable, and the trial court's finding that it was not based solely on the juror's race is supported by the record.

Based upon the preceding analysis, we hold that there was sufficient evidence in the record to support the trial judge's finding that there was no purposeful discrimination by the prosecutor in the use of his peremptory strikes. Appellant's fifth point of error is overruled.

Since no reversible error arose with regard to the State's use of peremptory strikes, a new trial is not required. For the reasons stated in *Keeton,* supra, the punishment in the judgment is reformed to life.

W.C. DAVIS and WHITE, JJ., join the opinion but dissent to the reformation of the punishment to life. See *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr.App.1987).

TEAGUE, Judge, concurring.

One issue that is before this Court to resolve is whether the trial judge's finding that he believed the racially neutral explanation the prosecutor gave him as to why he exercised a peremptory strike on venire-

person Littleton is supported by the evidence. There is no evidence in this record that might support a contrary finding. If believed, the prosecutor's explanation was sufficient to demonstrate that he exercised a peremptory strike on Littleton for non-racial reasons. The trial judge believed him, and the record supports that finding.

I write because I do not believe that the majority opinion is sufficiently clear on the fact that the prosecutor, who was the only witness to testify on the issue, was never cross-examined by appellant's attorney, either when the prosecutor testified at trial or when he testified at the post-trial hearing that this Court ordered to be conducted. I repeat: The only testimony or evidence that the trial judge had to decide whether the prosecutor exercised one of his peremptory strikes on Littleton because of racial or race-neutral reasons was the unimpeached testimony of the prosecutor. The trial judge chose to believe the prosecutor, whose testimony was unimpeached, and the evidence is sufficient to support the trial judge's finding.

Because the majority opinion correctly holds that the evidence is sufficient to support the trial judge's finding that the prosecutor gave a "race-neutral" explanation or reason why he used a peremptory strike on the black venireperson Littleton, I concur, albeit I do so reluctantly. I do not concern myself with the two peremptory strikes the prosecutor used on two other venirepersons who were of the same race as appellant because I find that the evidence is more than sufficient to support the trial judge's findings that the prosecutor's explanations or reasons for exercising his peremptory strikes on those persons were "race-neutral".

Littleton concerns me, and that is why I file this concurring opinion. The only explanation the prosecutor gave for striking Littleton was that approximately 11 or 12 years previously Littleton had been convicted three times for being a "bootlegger", a misdemeanor offense that did not disqualify Littleton from serving as a juror in this cause. There is nothing, however, that reflects or indicates that in the intervening eleven or twelve years Littleton had continued his "bootlegging" activities, or that he, Littleton, during that period of time, had engaged in any other criminal activity, or that Littleton was other than a "fine" and "upstanding" citizen of Navarro County when he served as a prospective juror in this cause. Thus, at least record wise, there is nothing before us that might reflect or indicate that Littleton would not have made a "good" juror for the State, as well as the defense. In fact, the record clearly indicates to me that Littleton would probably have made the State a "good" juror. That, however, is not the issue before this Court to resolve. The issue before this Court to resolve is whether there is sufficient evidence to support the trial judge's believing the prosecuting attorney's race-neutral explanation as to why he used a peremptory strike on Littleton. As the law now stands, and given the record before us, I am compelled to vote to uphold the trial judge's finding that he believed the "race-neutral" explanation or reason that the prosecutor gave.

The record reflects that counsel for appellant never challenged the "race-neutral" explanation the prosecutor gave as to why he exercised one of his peremptory strikes on Littleton. In fact, the record reflects that when the prosecutor testified after he exercised a peremptory strike on Littleton, as well as when he testified at the post-trial hearing, he was never cross-examined by defense counsel, although counsel was apparently not prohibited from cross-examining him.[1] Nor was any effort made by defense counsel to have the trial judge

---

1. A "Batson" hearing, of course, should be an adversary proceeding. See and compare *United States v. Thompson,* 827 F.2d 1254 (9th Cir., 1987). To ensure an adequate record for review, defense attorneys especially are charged to make an adequate record in the trial court.

Of course, if one prospective member of the defendant's race is excluded for racial reasons, this will invalidate the entire jury selection process. E.g., *State v. Brinkley,* (Mo.Ct.App., W.Dist., No. 38,797, November 3, 1987). Cf. *U.S. v. Tucker,* 836 F.2d 334 (7th Cir.1988.)

make a comparison analysis in deciding whether the prosecutor's "neutral explanations" were rebutted or impeached, i.e., no effort was made to show the trial judge that there was no difference, except race, between Littleton and any unchallenged white venireperson. In sum, all that we have before us are the reasons the prosecutor gave for striking Littleton, which reasons are facially "race-neutral", and the trial judge's finding that he believed those reasons. Given the state of the record, I am unable to find a basis for overruling the trial judge's finding.

Although I find that any rational trial or appellate court judge could have found that although the race-neutral explanation by the prosecutor had the ring of truth or plausibility to it, he could have also found it was actually fallacious (specious); thus, I am unable to say that the record would support the finding that the trial judge should have disbelieved the prosecutor and rejected the "race-neutral" explanation that the prosecutor gave as to Littleton.

In *Tompkins v. State* (Tex.Cr.App. No. 68,870, October 7, 1987) (presently pending before the Supreme Court of the United States on appellant's petition for certiorari, see *Tompkins v. Texas,* Supreme Court Number 87–6405), the following was pointed out: "A trial judge, in determining whether a prospective juror has been challenged by the prosecution on a racial basis in violation of the United States Constitution ..., has an obligation to weigh the evidence and assess the credibility of the witnesses (footnote omitted). In short, the trial judge is a factfinder. If from the evidence he believes that the prosecutor exercised peremptory strikes to exclude venirepersons based upon racial considerations, it is his duty to so find and to provide appropriate relief. This Court and the courts of appeals are principally reviewing courts. We do not substitute our judgments of witnesses' credibility and evidentiary weight for those of the factfinder, but affirm those judg-

ments whenever the record discloses sufficient evidence in their support." (Page 8, slip opinion.) The following was also pointed out in *Tompkins,* supra: "[A]t a hearing conducted pursuant to *Batson,* the trial judge is the factfinder, and it is his responsibility to weigh the evidence and determine the credibility of the witnesses. A reviewing court should reverse his findings only when they are not supported by sufficient evidence or, as we often say, for an 'abuse of discretion.' " (Footnote 6A, page 9, slip opinion).

In *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court held, inter alia, that the prosecutor's exercise of his peremptory strikes on venirepersons of the same race as the defendant did not per se constitute a denial of equal protection. Although the Supreme Court expressly held in *Swain,* supra, that prosecutors may not exclude members of the defendant's race through the exercise of peremptory strikes solely on the basis of race, it also held that "the defendant must, to pose the issue, show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time ..." 85 S.Ct. at 839. The Court further held that a presumption that the prosecutor did not exercise his peremptory strikes on account of race or on the false assumption that members of the defendant's race as a group are not qualified to serve as jurors existed, and merely because no member of the defendant's race had ever served as a juror in a criminal case which the prosecutor had prosecuted was insufficient to establish a prima facie case of purposeful discrimination in his jury selection process or in the exercise of his peremptory strikes on members of the Negro race. Thus, under *Swain,* supra, in order for the defendant to establish a prima facie case of racial discrimination in the prosecutor's jury selection process, it was necessary for him to show that the prosecutor had repeatedly struck blacks in a number of cases which he had prosecuted. As case law shows, the above test effec-

tively insulated from challenge the prosecutor's use of his peremptory strikes on venirepersons who were of the same race as the defendant, and he was thus free to strike a venireperson who was of the same race as the defendant—almost with impunity. See, for example, *Ridley v. State*, 475 S.W.2d 769 (Tex.Cr.App.1972). This Court's records reflect that even in counties of this State which have large numbers of members of the Negro race, and the defendant was of that race, few members of that race ever got to serve as jurors because they were peremptorily struck, usually by the prosecutor. For example, "In 100 felony trials in Dallas County in 1983–1984, prosecutors peremptorily struck 405 out of 467 eligible black jurors; the chance of a qualified black sitting on a jury was one-in-ten, compared to one-in-two for a white. (Footnote omitted.)" 106 S.Ct. at 1727.

However, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), changed the rules, as far as what it takes for the defendant to establish a prima facie case of racial discrimination in the prosecutor's jury selection process and what it takes for the prosecutor to overcome such prima facie case once it has been established. A majority of the Supreme Court in *Batson*, supra, reaffirmed that the Equal Protection Clause of the Federal Constitution prohibits a prosecutor from striking potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the prosecutor's case against a black defendant, and held that once the defendant established a prima facie case of racial discrimination in the prosecutor's use of his peremptory strikes on members of the same race as the defendant the prosecutor was then required to come forward and give a race-neutral explanation as to why he struck a venireperson of the same race as the defendant. In that instance, the prosecutor may not simply refuse to disclose his reasons for exercising his strike. He is further prohibited from merely saying that "I did not strike the venireperson because of race." He has to

go further and articulate a race-neutral explanation related to the particular case to be tried, i.e., he has to "give a 'clear and reasonably specific' explanation of his 'legitimate reasons,' for exercising [his peremptory strikes]." However, once the prosecutor does that the defendant's prima facie case is rebutted and the ultimate decision whether the prosecutor's "race-neutral" explanation is believable rests solely with the trial judge, subject to review by an appellate court.

Under *Batson*, supra, once the defendant makes a prima facie showing of racial discrimination based on the prosecutor's use of his allotted peremptory strikes on persons of the same race as the defendant, the burden then shifts to the prosecutor to come forward and give a race-neutral explanation for the exercise of each of the peremptory strikes that he used on persons of the same race as the defendant. The prosecutor may not justify exercising a peremptory strike on a prospective venireperson of the same race as the defendant on hunch or intuition. The prosecutor must respond with a "race-neutral explanation", and the trial judge, as the fact finder, is free to believe or disbelieve his testimony.

In sum, and contrary to the law as it existed before *Batson*, supra, once the defendant has established a prima facie case of racial discrimination in the prosecutor's jury selection process, the prosecutor now must open his closet and release therefrom for all the world to see his reasons, which must be race-neutral, why he exercised a peremptory strike on a venireperson who was of the same race as the accused. The prosecutor must, when required to do so, justify and explain, by giving race-neutral reasons, why he used a peremptory strike on a venireperson who was of the same race as the defendant.

Almost needless to say, *Batson*, supra, sent shock waves throughout prosecutors' offices of this Nation, and apparently gave many defense attorneys what now appears to be a false impression, that merely be-

cause the prosecutor struck a venireperson who was of the same race as the defendant and a prima facie case was found to be established, that ended the matter. I find from the cases that have come before this Court involving resolution of the "Batson" issue, as well as those I have read that have come before the courts of appeals, and even cases from other jurisdictions, that it appears that both sides, in particular the defense side of the bar, sorely misperceived what the Supreme Court had stated and held in *Batson*, supra. If there is one thing that the Supreme Court did not hold in *Batson*, supra, it was that prosecuting attorneys may not exercise a peremptory strike on a member of the same race as the accused. Under *Batson*, supra, a prosecuting attorney may exercise a peremptory strike on a member of the same race as the accused provided that the exercise of that strike is not racially motivated.[2] A careful reading of *Batson*, supra, also makes it clear that when the accused establishes a prima facie case of racial discrimination, because the prosecutor exercised his peremptory strikes on members of the same race as the defendant, the defendant's work has just commenced, and not ended. When the prosecutor comes forth and gives a "race-neutral explanation" as to why he struck a minority venireperson who is of the same race as the accused, the accused must clearly demonstrate on the record why the trial judge should disbelieve the prosecutor's explanation. If the trial judge believes that the prosecutor's reasons are race-neutral, and there is nothing in the record to show that the trial judge's decision was erroneous, the appellate court will have no choice but to state the following: "The trial judge is the trier of the facts and judge of the credibility of the witnesses and the weight to be given to the testimony, i.e., he may accept or reject the testimony of the witnesses in deciding the issues. The evidence in this cause supports the trial judge's finding." See and compare the situation involving the trial judge's decision to admit a challenged confession of

the defendant, and see, for example, *Mays v. State*, 726 S.W.2d 937, 946 (Tex.Cr.App. 1986), *Hawkins v. State*, 613 S.W.2d 720, 731 (Tex.Cr.App.1981).

The Supreme Court in *Batson*, supra, unfortunately did not inform us of what it believed might constitute a sufficient "race-neutral explanation" by a prosecuting attorney to rebut a defendant's prima facie case of racial discrimination in the prosecutor's exercise of his peremptory strikes on members of the same race as the defendant. Nor did it inform us how much detailed information the prosecutor must give in order that a "race-neutral explanation" might be accepted by the trial judge. The only thing the Supreme Court told us is that the prosecutor's reason need not reach the level of a challenge for cause. In the concurring opinion that he filed in *Batson*, supra, Justice White advised us that "Much litigation will be required to spell out the contours of the Court's Equal Protection holding today, and the significant effect it will have on the conduct of criminal trials cannot be gainsaid." 106 S.Ct. at 1725–1726. This is perhaps very true. However, it would appear that if *Batson*, supra, is to be given any substantive meaning, a prosecutor should not be permitted to sustain his burden by giving what appear to be facially specious "race-neutral" reasons, such as "I struck the juror because he appeared to be inattentive when I spoke with him, but he appeared attentive when defense counsel spoke with him"; "I struck the juror because she held her head in her hands when I spoke to her, but when defense counsel spoke she looked him straight in the eye"; and "I struck the juror because I believed that she lived in the same neighborhood as the defendant." These amount to nothing less than reasons for exercising a peremptory strike. It is true, of course, that each of the above reasons is a generic "race-neutral" reason, but there is nothing in any of the reasons that might cause it to be related to the case to be tried. "If such easily generated ex-

---

2. After all, even after *Batson*, supra, a State's    peremptory strike is still a peremptory strike.

planations are sufficient to discharge the prosecutor's obligation to justify his strikes on non-racial grounds, then the protection erected by the Court today may be illusory." (Marshall, J., concurring opinion, 106 S.Ct. at 1728).

It appears, however, that until the Supreme Court clarifies *Batson,* supra, if the prosecutor gives a race-neutral explanation, that appears more in the form of a conclusion rather than support for that conclusion,[2A] and the trial judge believes that reason, that will be sufficient to rebut the defendant's prima facie case of racial discrimination in the jury selection process, and further will be sufficient for an appellate court to sustain the trial judge's decision to believe the prosecutor.

In this cause, four members of appellant's race were on the jury panel from which the jury was selected. One of the four was selected to be on the jury. The prosecutor exercised three of his allotted fifteen peremptory strikes on the remaining three black persons. The prosecutor, after he exercised each strike, testified and gave a race-neutral reason. He later confirmed this in the post-trial "Batson" hearing.

After this Court remanded this cause to the trial court for a "Batson" hearing, based upon the prosecutor's concession, the trial judge found as a matter of law that appellant established that the prosecutor struck members of the same race as he was (Negroid), thus finding that appellant established a prima facie case of racial discrimination in the prosecutor's jury selection process. The trial judge expressly found the following: "2. The Court finds that the prosecutor exercised premptory [sic] challenges to remove from the venire [three] members of the defendant's race; 3. The Court finds that the attorney for the defendant raised an inference of purpose-

ful discrimination; 4. The Court finds that the prosecutor came forward with a neutral explanation for each of the premptory [sic] challenges of prospective jurors of the defendant's race; 5. *The Court finds that the explanation given by the prosecutor in each case is completely credible* (my emphasis); and 7. The Court finds that there was no purposeful discrimination by the prosecutor in the use of his premptory [sic] strikes whatsoever." Given the fact that the trial judge found that appellant established a prima facie showing of purposeful racial discrimination by the prosecutor when he exercised three of his fifteen peremptory strikes on members of the same race as appellant, I believe that the main and primary issue that is before this Court is whether the prosecutor was compelled to give a more detailed explanation as to venireperson Littleton. If all that is required is the mere giving of a race-neutral reason, without giving any details to support the reason, then the trial judge had a basis on which to make his express finding that he believed the prosecutor's race-neutral explanation why he peremptorily struck Littleton.

Pertinent to the black venireperson Littleton, the record reflects that Littleton testified during his voir dire examination that he was "not acquainted with anybody in … the District Attorney's Office." Littleton also testified that he had not "[ever] had any trouble with any police officers." In all respects, Littleton was shown to be an acceptable capital murder juror. At no time during his voir dire examination of Littleton did the prosecutor question Littleton about any of his past criminal transgressions or his past dealings with any member of the law enforcement establishment, including the prosecutor or any member of his office who prosecuted appellant three times for "bootlegging". The record

---

**2A.** The term "reason" is defined as "a statement offered in explanation or justification", whereas "explain" is defined as "to give the reason for or cause of", *Webster's New Collegiate Dictionary* (1980 edition). The terms are often used interchangeably. My concern with a prosecutor's

exercising a peremptory strike on a member of the same race as the defendant involves the rationale for that reason, i.e., the underlying reason why the prosecutor struck the minority member rather than the "reason" itself.

also reflects that after Littleton's voir dire examination was completed the prosecutor requested, and was granted, a short recess "to check out some records." I assume by this statement that the prosecutor was unfamiliar with appellant's past criminal transgressions and wanted time to learn if his office or the Clerk's Office reflected anything regarding Littleton's possible prior criminal record. After the recess, the prosecutor then exercised one of his peremptory strikes on Littleton. Thereafter, the prosecutor testified that he exercised a peremptory strike on Littleton because on October 12, 1974, (this trial occurred in 1986, approximately twelve years later), Littleton was convicted of transporting whiskey and wine in a dry area, and on December 17, 1975, he was convicted of committing two separate transporting whiskey and wine in a dry area offenses. The prosecutor gave the following reason for striking Littleton. "I exercised my right to peremptorily challenge Mr. Littleton based solely upon these prior misdemeanor convictions and run-ins with the law and did not exercise that challenge because Mr. Littleton was of any particular race, color or creed." However, there is nothing in the record that might reflect or indicate, except possibly Littleton decided to retire in 1975 from being a "bootlegger", that Littleton had engaged in "bootlegging" or other criminal activities after 1975. At the "Batson" hearing, without giving any details, the prosecutor embellished upon the reason he gave at trial, "because of [appellant's] contacts at and by my office, he could not be fair to the State of Texas." The prosecutor, however, never explained what "contacts" Littleton might have had with him or his office which caused the prosecutor to later conclude that Littleton could not be a fair and impartial juror for the State. It would certainly appear that if Littleton's "contacts" with the prosecutor or his office had resulted in any noteworthy unpleasant experience, the prosecutor would have developed this during his voir dire examination of Littleton, but he didn't. As noted, Littleton testified during his voir dire examination that he

was not acquainted with anyone in the District Attorney's Office. Unfortunately, Littleton was not subpoenaed by either the prosecutor or appellant to testify, nor did he testify at the post-trial "Batson" hearing. In any event, there is nothing in the records before this Court that pertain to this cause that might reflect or indicate that simply because of the prior misdemeanor convictions Littleton had sustained "he could not be fair to the State of Texas." Although I can appreciate the prosecutor's concern, after he had learned that Littleton had previously been convicted three times of "bootlegging", about letting Littleton serve as a juror in this cause, I am unable to conclude that this reason, without more, would cause him to be per se unacceptable as a juror in this cause. I am unaware of any studies or research that might indicate that "bootleggers" make poor jurors for the State. Given the lengthy period of time that had elapsed since Littleton was last convicted of "bootlegging", it appears to me that he might very well be classified as a "reformed bootlegger", and, if so, much like a "reformed drunk", he could be a very dangerous juror for the defense, and not the State.

In *Batson*, supra, the Supreme Court held that once a prima facie case has been established by the defendant the burden then shifts to the prosecutor to come forward with a race-neutral explanation that is related to the case to be tried—why he exercised his peremptory strike or strikes on persons of the same race as the defendant, and that such relates to this case. The Supreme Court also held in *Batson*, supra: "The prosecutor must articulate a neutral explanation related to the particular case to be tried." 106 S.Ct. at 1723. He "must give a 'clear and and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." 106 S.Ct. at 1724.

Exactly what does all of this mean? What exactly is the burden that the prosecutor in this cause had to satisfy once appellant established his prima facie case?

Exactly how heavy is this burden that the prosecutor must carry? Under *Batson*, supra, the prosecutor has not satisfied his burden if he merely states that he was not racially motivated when he exercised his peremptory strike on a venireperson of the same race as the accused. The reasons the prosecutor gives "need not rise to the level justifying a challenge for cause." 106 S.Ct. at 1723. However, he cannot satisfy his burden "merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.'" 106 S.Ct. at 1723.

Of course, if the prosecutor admits that the reason he exercised a peremptory strike on a member of the same race as the defendant, his candor will unquestionably cause him to fail in satisfying his burden of proof to rebut the defendant's prima facie case. "Thus, a prosecutor's admission that race was an influencing factor in the selection process vitiates the legitimacy of the entire process. See *Batson* 106 S.Ct. at 1719; *Neal v Delaware*, 103 U.S. (Otto) 370, 397, 26 L.Ed. 567 (1881)." *Speaker v. State*, 740 S.W.2d 486, 489 (Tex.App.–Houston [1st Dist.] 1987) (No P.D.R.).

Was the prosecutor required, before the trial judge was entitled to believe him, to articulate why, excluding the race of Littleton, that Littleton would not make a "good" juror for his side? The record does not reveal whether there were any white "bootleggers" on the jury panel who were not peremptorily struck. Although convicted "bootleggers" might share a common view of the criminal justice system antithetical to the interests of law enforcement, the record does not reflect or indicate that Littleton would not have been a fair and impartial juror in this cause, both for the prosecution and the appellant.

The main flaw that I find in the majority opinion of *Batson*, and in this Court's majority opinion in this cause is that they fail to address what Justice Marshall correctly observed in the concurring opinion that he filed in *Batson*, supra, namely, that "Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial judges are ill-equipped to second-guess those reasons." 106 S.Ct. at 1728.

What *Batson*, supra, did in my view, as far this case goes, is that it forced the prosecutor in this cause to make known what were probably formerly covert expressions of what he might not otherwise have dared say on the record, i.e., he had to declare to the world why he exercised his peremptory strikes on members of a minority race, and that such decision was not racially motivated.

However, are such racially neutral reasons as the following, as well as the one given in this cause, and the above, sufficient, without more detailed explanation, to overcome a defendant's prima facie case of racial discrimination in the prosecutor's exercise of his peremptory strikes on members of the same race as the defendant, if the trial judge believes the prosecutor's conclusion? Do they constitute a sufficient basis for a trial judge to believe the prosecutor? "Because the juror appeared to have a dumb founded or bewildered look on his face"; "Because he appeared unkempt"; "Because he appeared gruff"; "Because he frowned at me and smiled at the defendant's attorney"; "Because he appeared to pay more attention to the defendant's attorney than he did me"; "Because he was inattentive when I asked him questions, but when the defendant's attorney asked him questions he appeared to be attentive"; "Because he appeared to be in a bad mood"; "Because he did not appear to know what life is like or what life is all about", "Because he may live in the same neighborhood where the defendant lives"; "Because he was unemployed"; "Because he was overly employed, i.e., he maintained too many jobs"; "Because he was a scientist, schoolteacher, doctor, lawyer, judge, or cook at the country club"; "Because he appeared to be too smart"; "Because he appeared to be too dumb"; "Because he was employed at X corporation and my past experiences with employees of same have led me to conclude that persons em-

ployed by X corporation make terrible jurors for the State"; "Because he was physically handicapped"; "Because he appeared to be mentally disturbed"; "Because he was too ugly"; "Because she was too pretty"; "Because he was the same age as the defendant"; "Because he has a grandchild the same age as the defendant"; "Because I did not like the juror's eye contact"; "Because I thought the juror and the defendant were employed by the same company"; "Because he wore a gold earring in his ear".[3]

The above are all facially race-neutral reasons. Will these kinds of reasons, standing alone, be sufficient in Texas to support a trial judge's implicit or express finding that the prosecutor's reason was race-neutral? Will one or more of the above reasons be sufficient to overcome the defendant's prima facie case of racial discrimination in the prosecutor's jury selection process, or will this Court require more? Interestingly, many of the above reasons have already been given by prosecutors of this State to rebut a defendant's prima facie case, see, for example, *Morrison v. State* (Waco Court of Appeals, No. 10–86–177–CR, January 22, 1987, P.D.R. refused March 30, 1988); as well as in the Alabama cases, *Ex parte Branch*, 526 So.2d 609 (Ala.1987), and *Bryant v. State*, 516 So.2d 938 (Ala.Cr.App.1987); the Missouri case, *State v. Antwine*, 743 S.W.2d 51 (Mo. Sup.Ct.1987); the Arizona case, *State v. Tubbs*, 155 Ariz. 533, 747 P.2d 1232 (App.1987), and the Florida case, *Slappy v. State*, 503 So.2d 350 (Fla.Dist.Ct.App.1987), that Judge Miller's majority opinion so heavily relies upon, in its attempt to give the bench and bar of this State "guidelines" in this area of our law.

Judge Miller's majority opinion states the following: "We first note that the trial judge's role is slowly being defined by our sister states." (Page 865.) This statement, however, overlooks the fact that virtually every day in each of our trial courts of this State trial judges are called upon to become finders of fact, and their decisions usually depend upon their assessment of the credibility of a witness or witnesses. See *Tompkins v. State*, supra.

In the *Batson*, supra, situation, the trial judge certainly has the obligation to weigh the evidence and assess the credibility of the witnesses. If he determines from the evidence that the prosecutor's reasons for exercising his peremptory strikes on members of the defendant's race are racially neutral, it is his duty to so find and provide appropriate relief. If he determines the contrary, it is his duty to also so find.

The difficult question to answer, though, is what constitutes an adequate race-neutral explanation? How plausible must it be? How much in-depth explanation must the prosecutor give in order to support his race-neutral explanation? How particularized must his reason be? Must the prosecutor's reason amount to something more than a suspicion or hunch that the prospective juror will not be a fair juror to his side? If the prosecutor gives a racially neutral explanation, such as one of the above reasons, or the one given in this cause, and the trial judge believes him, will that, standing alone, be sufficient? If that is the law, excepting the situation where the prosecutor admits on the record that he was racially motivated when he exercised his peremptory strikes, see *Speaker*, supra, I believe that, much like this Court's records reflect the number of times a trial judge has disbelieved a law enforcement official concerning the admissibility of a defendant's confession, it will be the rare

---

**3.** I believe that it will be the rare prosecuting attorney indeed who cannot add to the above list distinguishing features that caused him to peremptorily strike a prospective minority juror, or will not be able to give additional subjective personality reasons why he peremptorily struck a prospective minority juror, which reasons will withstand review by the trial judge, whose decision at this time is almost unreviewable by an appellate court. Cf. *People v. Hall*, 35 Cal.3d 161, 672 P.2d 854, 197 Cal.Rptr. 71 (1983); *People v. Fuller*, 136 Cal.App.3d 403, 186 Cal.Rptr. 283 (1982), which cases raised the issue in a light different from "Equal Protection", but did so on the right to have a fair cross-section of the community serve as jurors.

case where the trial judge disbelieves a prosecuting attorney and finds that the prosecutor failed to overcome the defendant's prima facie case of racial discrimination in the prosecutor's jury selection process. And this is not to say that prosecutors of this State will deliberately lie to our trial judges. When a prosecutor states, as occurred here, that he struck a minority prospective juror solely because the juror sustained three "bootlegging" convictions over 12 years ago, he is in all probability telling the truth, i.e., he used a peremptory strike just like he always did in the past.

I believe that once the defendant has established a prima facie case of racial discrimination in the prosecutor's jury selection process, *Batson*, supra, requires more than the prosecutor merely generating reasons which he did not previously have to give. I find that any of the above reasons, *standing alone*, are too weak and insufficient to support a finding by the trial judge that the prosecutor did not exercise a peremptory strike because of race; especially in light of the fact that the defendant has just established a prima facie case of racial discrimination in the prosecutor's jury selection process. However, a weak reason offered by the prosecutor for the exercise of a peremptory strike on a member of the same race as the defendant may be sufficient. It is imperative, however, if the prosecutor uses one of his peremptory strikes on a member of the same race as the defendant, he should couple his objectively stated reason with a reasonable explanation for his reason, i.e., he must go further and give an explanation for his reason that demonstrates, at least by a preponderance of the evidence, that he has overcome the defendant's prima facie case. To require less, I fear, will cause *Batson*, supra, to be an act without any meaning by the Supreme Court. As Justice Marshall so pointedly and correctly stated in the concurring opinion that he filed in *Batson*, supra: "If such easily generated explanations are sufficient to discharge the prosecutor's obligation to justify his strikes on non-racial grounds, then the protection

erected by the Court today may be illusory."

To require the prosecutor to go further, and give a reasonable explanation for his conclusion that the juror would not make a good State's juror, before the trial judge can find in his favor, does not, of course, mean that the prosecutor was not being truthful in giving his conclusion to the trial judge; it simply means that until he supports his conclusory reason with "legitimate reasons" which are "clear and reasonably specific", and which "relate to the particular case to be tried", he has not rebutted the defendant's prima facie case of racial discrimination in the prosecutor's jury selection process.

Furthermore, unless and until the prosecutor has gone further, the trial judge has nothing on which he might evaluate the prosecutor's justification why he struck the juror. I find that this is a necessary requirement in order for the trial judge to make a reasoned determination that the prosecutor's facially innocuous explanations are not contrived, even when apparently done unknowingly, to avoid admitting an act of racial discrimination or racial bias.

Although I am in favor of the above, I am also compelled to acknowledge in this cause that because defense counsel did not cross-examine or impeach the prosecutor, and because he did not seek to impeach the prosecutor through other evidence, such as making and presenting to the trial judge a comparison analysis of the white venirepersons who were not struck with those minority venirepersons who were struck, the only thing that the trial judge had to base his decision on whether or not to believe the prosecutor was the prosecutor's own testimony. The prosecutor's testimony stands unrebutted, unimpeached, uncontroverted, undisputed, unimpugned, etc. The appellant's attorneys never attempted to present any evidence, either independently of the prosecutor's or through cross-examination of the prosecutor, that might warrant a rational trier of fact finding contrary

to what the trial judge found. There is nothing in this record that might reflect or indicate that the trial judge considered himself bound to accept the prosecutor's explanation at face value. Given the meagre evidence which the trial judge had before him to decide the issue, he had a choice: He could believe or disbelieve the prosecutor. In this instance he chose to believe the prosecutor and the record supports his express finding that the explanation the prosecutor gave constituted a race-neutral reason.

I am compelled to reach the above conclusion, albeit I do so reluctantly, simply because of the state of the record that is before us. Thus, although the prosecutor's reason is not as clear, reasonably specific, neutral, and legitimate as it should or could have been, nevertheless, I cannot conclude that the prosecutor's reason as to Littleton amounted to a transparent or contrived attempt to convert a racial explanation into a legitimate race-neutral reason for exercising a peremptory strike on Littleton. Cf. *State v. Brinkley*, supra.

Under *Batson*, supra, and *Tompkins*, supra, the evidence adduced, although terribly meagre, supports the trial judge's finding that the prosecutor gave a race-neutral reason for exercising a peremptory strike on Littleton.

Therefore, given this record, I am compelled to concur in the majority's decision to affirm the trial court. Given a better record I would probably be compelled to dissent for the reasons I have given.