**James MUNSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08–89–00106–CR.**

Court of Appeals of Texas, El Paso.

July 12, 1989.

Ross Teter, Dallas, for appellant.

Jeffrey B. Keck, Asst. Dist. Atty., Dallas, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a conviction for aggravated sexual assault on a child. The jury assessed punishment at twenty years' imprisonment. We affirm.

Appellant's sole point of error asserts that the State impermissibly exercised its peremptory challenges on the basis of race and gender to exclude black males from service on the petit jury. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim.App.1988). Appellant is a black male; the complainant is a black female. Six black panel members, four males and two females, are alleged to have been within numerical range of potential petit jury service after all challenges for cause were decided. The four black males were peremptorily struck by the State, and the two black females by the defense. The issue was properly preserved in the trial court by timely objection and *Batson* hearing. At the hearing, the State attempted to present neutral explanations for these four peremptory challenges and denied any racial or gender motivation.

During argument, the defense admitted using its two peremptories to challenge the black females because of their race and gender. Counsel aptly pointed out that the constitutional strictures of due process and equal protection bind the State, not the individual. Due to our evaluation of the evidence in support of the trial court's ruling, we need not reach the State's contention that such action by a defendant waives complaint as to possible impropriety in the State's use of its peremptory challenges.

In *Keeton*, the Court of Criminal Appeals directed that appellate review incorporate a consideration of the evidence in a light most favorable to the trial judge's ruling. 749 S.W.2d at 870. The test is not abuse of discretion or clear error, but rather whether there was sufficient evidence to support the trial judge's decision.

The four jurors at issue were: Blanton (No. 3), Daniels (No. 6), Hewitt (No. 15) and Willis (No. 35). We will not discuss the evidence as to Willis. Three jurors were excused for cause, twelve were seated and ten were struck by the State. Regardless of whether the defense used all ten of its peremptory challenges, and regardless of whether the State exercised or abandoned its tenth and final strike against Willis, he was mathematically not subject to being seated on the petit jury. The twelve ultimate jurors had already been selected from the unobjected-to lower numbered veniremen.

With regard to Daniels, he stated on voir dire that a close friend of his had been sent to the penitentiary for receiving stolen property. He himself had served as a witness in a court martial for murder. The prosecutor based his peremptory challenge on these factors. They provide an ample basis for such challenge. While not subject to challenge for cause, Daniels was certainly not an ideal juror from a State perspective.

With regard to Hewitt, he stated that he had been charged twice with DWLS in Dallas County, and felt that he had subsequently been treated unfairly by members of the Dallas Police Department. Hewitt had two brothers currently in prison—one

for automobile theft and one for statutory rape. Six other relatives had served penitentiary time. It would have been malpractice for the prosecutor not to have struck Hewitt.

That leaves Blanton, Panel Member No. 3. The prosecutor expressed two reasons for this strike. First, he believed that Blanton had exhibited an "I don't care attitude" during voir dire, and thus, was not a desirable juror. Second, the prosecutor had been instructed, by his senior counsel, to strike truckers in this type of case. This was Blanton's occupation. *Keeton* states that apparently neutral explanations offered by the State are not to be accepted at face value, but are to be evaluated by the trial judge under certain identified criteria derived from opinions in other jurisdictions cited in *Keeton*. The question is whether or not the neutral explanation is being offered as a subterfuge, by the State, to obscure a discriminatory strike.

In assessing the explanations offered in this case, we preface our analysis with certain framework observations. The initial burden of proof, to establish a prima facie case under *Batson*, and the ultimate burden of proof of a *Batson* violation rest with the defendant. A suspect pattern of strikes is a prerequisite to the establishment of a prima facie case, triggering the State's obligation to come forth with neutral explanation. A suspect pattern of strikes, especially when coupled with a suspect pattern of explanations, not only satisfies the prima facie case requirement but offers substantial negation of the credibility of the State's explanations. For example, when the State not only strikes all members of a racial class and in each instance offers only intangible neutral excuses (bad attitude exhibited by non-verbal behavior), or excuses tenuously connected by logic to the case (a juror occupation not associated with the facts and not inherently aligned one way or the other with the criminal justice process), significant doubt is cast upon the truth of the explanations.

In the present case, with Juror Blanton, the State offered just the types of neutral explanations which are ripe for abuse. A potential for abuse does not mean abuse in fact however. Furthermore, here we are now dealing with only one suspect strike, Daniels and Hewitt presenting ample reason for peremptory challenge. Can one strike establish a "pattern" under *Batson* and *Keeton?* We do not foreclose the possibility of proving a *Batson* violation in only one strike, but the absence of a pattern of strikes or pattern of abusable excuses certainly favors the trial judge's ruling and increases the defendant's practical burden to make a liar out of the prosecutor.

Much of the voir dire decision process does turn upon intangibles and interpretation of non-verbal behavior. Not every explanation of a strike on such basis can be summarily disbelieved. That is particularly true in the absence of a pattern resort to such explanations which dovetails with a racial pattern to the strikes. The "trucker" rationale is, to say the least, eccentric, but again is not to be either automatically accepted or rejected. Under the criteria identified in *Keeton*, this occupation is not logically connected to the facts or participants in the case at bar. On the other hand, a white male juror who had worked in the trucking industry for twenty years was also subjected to peremptory challenge, purportedly on the same basis. Nothing in the voir dire transcription suggests any other reason for striking the white juror. While aggregating the bizarre impact of the expressed rationale, the striking of the white juror based on such occupation corroborates the actuality of the neutral explanation. Although the senior prosecutor testified and confirmed her instructions as to truckers, neither side saw fit to afford the appellate court the luxury of a more expansive explanation of this jury selection "quirk". In any event, the primary decision as to the credibility of the explanation rests with the trial judge, and there is sufficient evidence in the record to support his decision in this case. Point of Error No. One is overruled.

The judgment is hereby affirmed.