NO. 07-01-0135-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 24, 2002

_____

GERNORRIS WAYNE DIXON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 9951; HONORABLE TOM NEELY, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In this appeal, appellant Gernorris Wayne Dixon presents seven points of asserted error challenging his conviction for aggravated robbery and the jury-assessed punishment of 63 years confinement in the Institutional Division of the Texas Department of Criminal Justice. Overruling each of appellant's points of error, we affirm.

Appellant was charged by indictment of committing the offense of aggravated robbery on or about October 20, 2000, in Wilbarger County. The indictment alleged that he used or exhibited a firearm during the offense. It also contained an enhancement paragraph alleging a prior felony. Appellant pled not guilty and was tried before a jury over two days in April, 2001. The jury found him guilty and imposed the 63-year sentence. In his seven points, he challenges the legal and factual sufficiency of the evidence and the improper use of peremptory strikes in the composition of the jury. Because appellant challenges the sufficiency of the evidence, we begin with a recitation of the evidence presented at trial.

The State's first witness was Marilyn Kay Lopez (Lopez). On October 20, 2000, she was employed as a clerk at the Lafonda Motel, where she and her husband Louise Lopez (Louise) also resided. That morning, appellant appeared at the locked motel office door. Lopez recognized him because he had often stayed there. She opened the door for him and answered his query concerning the cost of a room. He left the office saying that he would return. He did return shortly, telling Lopez that a vending machine on the property had malfunctioned. Lopez testified she left the office to assist appellant and, while at the machine, he grabbed her around the neck with his right arm and placed a gun to her head with his other hand. He instructed her to go into the office to get the money that was there and threatened to kill her if she did not cooperate.

In response to his question outside the office door, Lopez stated that Louise was sleeping inside. In fact, no one was inside the office area. She testified that he took her

2

back outside, threatened her if she told what happened, released her and left. Lopez went to the office, locked the door, and called police. She stated she was in fear of death or serious bodily injury. Lopez identified appellant at trial as the man who assaulted her.

The State's second witness was Officer Dean Winters, who responded to Lopez's call about 9 a.m. He testified that Lopez identified appellant by name and gave a description of him and his clothing. Appellant was not arrested that day, but was picked up the following week. The State also called Tara Jackson, the dispatcher who took Lopez's call. She testified that Lopez recited to her what happened and stated that she recognized the man and his last name was Dixon. Jackson described Lopez's state as "hysterical." She identified written notes she made in the course of the call, which were introduced into evidence.

At the conclusion of the State's case-in-chief, appellant moved for a directed verdict on the basis that there was no evidence he had any intent to obtain and maintain control of property of another. The motion was overruled.

The defense called three witnesses. The first was Anthony Scott, appellant's cousin. Scott testified that he spent the night with appellant on October 19, 2000, at appellant's apartment, a few blocks from the motel. He stated appellant left the apartment about 9:00 a.m. that day. According to Scott, appellant returned between 11:00 a.m. and noon. On cross-examination, Scott admitted he told an investigator that appellant left the apartment "early" that morning, and did not return until noon. He did not believe this conflicted with his trial testimony.

The second defense witness was Melvin Whiteside, appellant's uncle. Whiteside testified that appellant came to his home at about 9:45 a.m. on October 20, 2000. He said appellant was wearing a dark-colored coat, appeared calm and stayed about 30 minutes. Appellant next called Chad Flye, another cousin of appellant's. He testified that he saw appellant at his mother's house from about 9:30 until 11:00 on the morning of October 20, 2000. He maintained this assertion even after being told another witness placed appellant at another location at 9:45 that morning.

The defense presented the testimony of Alfred Gaines, who had known appellant his entire life. He testified he met with appellant at 11:00 a.m. to move furniture to appellant's apartment. They did not move the furniture until later in the day because of rain. On cross-examination, the State sought to show the events Gaines testified to occurred in September rather than October.

The defense recalled Lopez and questioned her about her identification of appellant. She could not recall any unique or unusual features of appellant, but did recall that his clothes were dry, even though it was raining that morning. She admitted that she did not have any bruises or marks after the offense and that appellant owed the motel for two or three nights rent.

In his first and second points, appellant challenges the legal and factual sufficiency of the evidence of his intent to commit theft. The standards by which we determine the legal and factual sufficiency of the evidence are by now so well established that it is not necessary to discuss them at length. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct.

4

2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 128 (Tex.Crim.App. 1996). Suffice it to say, we must first determine if the evidence is legally sufficient, and if it is legally insufficient, render an acquittal judgment. If the evidence is legally sufficient, we must then determine if it is factually sufficient measured by the standards explicated in *Clewis*. *See id.* at 134. This requires us to determine whether, on neutral review, proof is so obviously weak as to undermine confidence in the jury's determination or the proof of guilt, adequate if taken alone, is greatly outweighed by contrary proof. *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App. 2000).

Appellant contends there is no evidence that the person who assaulted Lopez had an intent to commit theft and the evidence affirmatively shows that nothing was taken. The State points to the testimony of Lopez that appellant ordered her into the office to "get the money" as evidence of his intent to commit theft. We agree. The fact that no property was taken does not preclude a finding of each element of the offense. Robbery is defined in section 29.02(a) of the Penal Code. As applicable to these facts, the offense only requires that the person threaten another or place them in fear of imminent bodily injury or death with intent to obtain or maintain control of property, not that they actually complete a theft. *Blount v. State*, 851 S.W.2d 359, 364 (Tex.App.--Houston [1st Dist.] 1993, no writ). Viewing this evidence in the light most favorable to the verdict, it is sufficient to support an affirmative finding on each element of the offense. We overrule appellant's first point.

His second point challenges the factual sufficiency of the evidence. He fails to cite any evidence which greatly outweighs the evidence of guilt. Without such evidence, we

5

have no basis on which to usurp the jury's determination of the complaining witnesses' credibility. Consequently, there is no basis to find the evidence factually insufficient and we overrule appellant's second point.

Appellant's third point challenges the sufficiency of the evidence to support the submission of a jury charge on the use of a firearm. Sufficiency is measured against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge for the case would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 239-40. The testimony of Lopez was some evidence that appellant used a firearm in the commission of the offense. This evidence supported submission of the charge at issue. We overrule appellant's third point. On the same basis, we overrule appellant's fourth point, which challenges the legal sufficiency of the evidence supporting the deadly weapon finding.

In point five, appellant challenges the factual sufficiency of the evidence that he used a deadly weapon in the commission of theft. In support, he points to the testimony of his alibi witnesses. We initially note the fundamental principle that it is the exclusive province of the factfinder to determine the credibility of the witnesses, the weight to be given their testimony, and resolve conflicts in the evidence. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App. 1978); *Armstrong v. State*, 958 S.W.2d 278, 284 (Tex.App.-- Amarillo 1997, pet. ref'd). Moreover, the jury could reasonably have found there was no

6

conflict between the State's evidence and that presented by appellant.[1] Defense witnesses did not account for appellant's location between 9:00 and 9:30 a.m., the approximate time of the offense. The record shows the distance between the apartment and the motel was only a few blocks and well within walking distance. On this record, we cannot say the jury's verdict was so against the weight of the evidence as to be clearly wrong and manifestly unjust. We overrule appellant's fifth point.

Appellant's sixth and seventh points allege the deprivation of his rights to equal protection of law under the Texas and federal constitutions because, he alleges, the State improperly used a peremptory strike to remove the only member of the venire who was black. It is well established that the State may not use peremptory challenges for the purpose of excluding members of the defendant's race from the jury. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This rule is embodied in article 35.261 of the Texas Code of Criminal Procedure.

A party making a *Batson* challenge first makes a prima facie case that a venireperson was excluded on the basis of race. Then, the prosecution must come forth with race-neutral reasons for exercising the peremptory challenge. The defendant has the opportunity to rebut those reasons. The burden of persuasion remains with the defendant. Finally, the judge rules on whether the neutral reasons given for the peremptory challenge

---

[1]There was, however, clearly a conflict in the testimony of appellant's witnesses, which placed him in two locations over the same 15-minute period.

were contrived to conceal racially discriminatory intent.  *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App. 1988).

The trial court held a hearing on appellant's *Batson* challenge.  He made a prima facie showing by establishing the State struck the only member of appellant's race on the venire.  He also noted that the victim of the crime was of a different race.  The prosecuting attorney testified that he struck venire member Phillip Gaines because he "knew and was acquainted with the defendant," and was the brother of defense witness Alfred Gaines.  On cross-examination, the defense asked if any of his other peremptory strikes were because of relationships between venire members and the victim.  The defense did not identify any such specific relationships.  The trial court overruled his motion.

The State's argument on appeal in support of the trial court's decision describes the decision to strike the brother of a defense witness as "a no-brainer," but does not cite any authority in support.  While we agree that the jury's role in determining the credibility of witnesses makes the strike at issue intuitively race neutral, we must also examine how other Texas appellate courts have addressed this issue.  In *Clemons v. State*, 893 S.W.2d 212 (Tex.App.--El Paso 1995, no writ), the court considered a peremptory strike based on personal relationships between a venire member and the defendant's family.  *Id.* at 216. The court did not find the trial court's determination that this was a racially neutral reason to be "clearly erroneous" and overruled the challenge.  *Id.* at 218.  *See also Alexander v. State*, 919 S.W.2d 756, 765 (Tex.App.--Texarkana 1996, no writ) (upholding as racially neutral strikes of a prospective juror on the basis that they have a family member or close

8

friend who was arrested, charged or convicted of a crime).  We find the holding in *Clemons* applicable and overrule appellant's sixth and seventh points.

In sum, all of appellant's points are overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Chief Justice

Do not publish.