**Dexter Jerome GLENN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–87–00226–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 26, 1988.

Walter Pink, Catherine Greene Burnett, Morrow & Burnett, Houston, for appellant.

John B. Holmes, Dist. Atty. Harris County, Cathy Herasimchuk, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

DUNN, Justice.

A jury found appellant guilty of attempted murder and assessed punishment at 12 years confinement.

Appellant and complainant were strangers who got into a heated verbal exchange at a motel when complainant made some alleged derogatory comment about appellant. In the heat of this exchange, appellant drew a firearm. After both parties withdrew and left the scene, appellant, with his friend driving, drove past complainant and her friend walking to the bus stop, and repeatedly fired at them, hitting them both.

Upon investigating the shooting, the police were able to get appellant's name, a description of the car, and an address where he might be found. Upon arriving at the address, the officers found appellant and the car, and appellant showed them where he had hidden the guns. Appellant was then placed under arrest.

In point of error one, appellant argues that the trial court erred in accepting as neutral the prosecutor's explanations of his peremptory challenges during jury selection, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Under *Batson*, once the defendant makes a prima facie showing of purposeful discrimination in the selection of the jury, the burden shifts to the State to come forward with a racially neutral explanation, related to the particular case, for challenging black jurors. Once the prosecutor has articulated racially neutral explanations, the other side can attempt to show that such explanations are merely pretextual. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex.Crim. App.1988) (citing with approval *State v. Antwine*, 743 S.W.2d 51 (Mo.1987)).

The *Keeton* court, rejecting both the "clearly erroneous" and "abuse of discretion" standards of review, held that:

[O]ur focus, as well as the trial judge, should be on whether purposeful discrim-

ination was established. We will consider the evidence in the light most favorable to the trial judge's rulings and determine if those rulings are supported by the record. If the record supports the findings of the trial judge, they will not be disturbed on appeal.

749 S.W.2d at 870.

The record in this case reflects that after appellant made a prima facie showing of purposeful discrimination, the State offered the following explanations for the five challenged black venirepersons:

As to Number 7, I have noted that he vigorously agreed with [defense counsel]. In fact, he would chant back the answers to [defense counsel's] answers. He did not so vigorously agree with the State.

As to Juror Number 9, part of the reason was because of the number of children that that perspective jury member had. And also for occupation in an aide capacity at St. Anthony [hospital] being work, being Catholic, and working in a Catholic related center.

As to number 17, part of this was because of his wife's employment in social services. That's a liberal area. And he also seemed to respond to [defense counsel], I thought, or made more eye contact during [defense counsel's] Voir Dire than mine.

Number 25 ... made no eye contact with me. In fact, looked—seemed to me to look elsewhere. I have that noted in big letters.

Number 33 was a minister of music at a Baptist Church. The State felt that his activity in a religious field may somewhat affect him in his ability to judge or when it came to punishment and the amount of punishment he might give.

The State also noted that one black served on the jury, and that two others were not struck by the State.

Appellant argues that to hold some of the explanations given (i.e., working for a Catholic hospital and one's spouse being connected with social services), to be relevant, would make a mockery of the *Batson* due process and equal protection safeguards because any explanation offered, no matter how far removed from the issues to be resolved by the jury, would be sufficient. However, the record shows that at trial, appellant made no attempt to show that such explanations were "merely pretextual." *See Keeton*, 749 S.W.2d at 865.

Appellant further argues that the prosecutor's explanation that a black veniremember tended to have more eye contact with black defense counsel should not be sufficient to overcome a presumption of racially motivated strikes. This should be especially true, he argues, where the record supports defense counsel's uncontradicted statement that whites with whom he had agreement or eye contact were not the subject of peremptory strikes.

The record reflects that appellant made the following response to the State's explanations:

In response, Your Honor, we would like to point out that there were other white jurors who agreed with me that she did not strike, Mr. Cain ... In fact, most of the concepts I got very positive response by all of the whites involved and there were other jurors also that did not give her eye contact as such. Would like the record to reflect that, also.

The only evidence to support either eye contact or agreement with defense counsel is the statements of the prosecutor and the defense counsel. The alleged agreement with defense counsel must have been nonverbal, unrecorded responses by venirepersons to group questioning of the entire panel. The record reflects that neither the defense counsel nor the State individually questioned number 7 or number 17, who were challenged by the State because they agreed more with defense counsel. Nor did the defense counsel individually question the white venireperson whom he referred to as also agreeing with him.

The *Keeton* court cited with approval the following statement by an Arizona appeals court in *State v. Tubbs*, 155 Ariz. 533, 747 P.2d 1232 (Ct.App.1987):

> If a defendant is claiming the prosecutor was not being truthful in his responses, we note that the United States Supreme Court has stated that, since the findings of the trial judge largely will turn on an evaluation of credibility, appellate courts should give these findings 'great deference.' *Batson v. Kentucky*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21.

749 S.W.2d at 869.

We therefore must rely upon the trial court's factual determination of the credibility of the prosecutor and the defense counsel. We note that the trial judge was in a position to observe not only their statements, but also the entire voir dire proceeding.

Because of the foregoing, and because the State challenged only five of the nine black venirepersons, one of whom served on the jury, considering the evidence in the light most favorable to the trial judges rulings, we conclude that the record supports the implied findings of the trial judge of no purposeful discrimination.

Point of error one is overruled.

The discussion of the remaining points of error does not merit the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published.

The judgment of the trial court is affirmed.