Carter, IJ v St 







AFFIRMED
FEBRUARY 28, 1990
 
NO.10-89-069-CR
Trial Court
# 89-37-C
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

IRA JOE CARTER,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

* * * * * * * * * * * * *

 From 54th Judicial District Court
McLennan County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
A jury convicted Appellant of aggravated robbery and assessed
his punishment at ninety-nine years in prison. See TEX. PENAL CODE
ANN. § 29.03(a)(2) (Vernon Supp. 1990). Appellant complains that
the evidence was insufficient to establish that he was the
perpetrator of the offense. He also asserts that the court erred
when it denied his Batson


 motion, and when it charged the jury on
the punishment range for both aggravated robbery and aggravated
robbery by a habitual offender. Finally, he seeks to supplement
the record to reflect an alleged statement made by a prosecutor in
reference to the race of the parties. The judgment will be
affirmed.
Appellant claims in point three that the evidence was
insufficient to support his conviction because it failed to
establish that he was the perpetrator of the offense. The standard
on appeal is whether, viewing the evidence in the light most
favorable to the conviction, a rational trier of fact could have
found the essential elements of the crime beyond a reasonable
doubt. Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App.
1987). Additionally, when reviewing circumstantial evidence, the
question is whether the evidence excludes every other reasonable
hypothesis except the defendant's guilt. Id. 
At approximately 10:00 p.m. on December 20, 1988, Vicki Looney
and her nine-year-old son were robbed in the parking lot of a
Target store. Looney testified that her assailant was a dark-skinned black man, and that she saw his face. She also stated
that he wore a "shirt jacket type thing." Although she admitted
that she had been unable to select his picture from a photographic
array, she explained that the picture in the array appeared to
depict someone with lighter skin than Appellant's. Furthermore,
when she asked for a "live" line-up, officers were unable to comply
because Appellant had already "bonded out" of jail. When Looney
identified Appellant at trial, she did so without "any doubt."
As Ronald Williamson exited Target that night, he noticed a
black man crouched beside a car in which a white woman and child
were sitting motionless. Williamson got into his car, parked
approximately three spaces from the car he was observing, and
watched until the black man left. Williamson then drove his car
slowly after the man, who was wearing a dark jacket, and observed
him getting into another automobile which drove away. Although
Williamson was unable to observe the man clearly enough to identify
him, he described the black man as about "six feet tall with a
medium build." Further, he said the black man rode away in a 1977
orange Mustang with dealer's tag number P11021.
Officers Freeman and Scarbrough, who traced the tag number to
Darlene Norwood, began a "stake-out" on her residence. Freeman
spotted the orange Mustang around midnight, and pursued the vehicle
without stopping it until Officer Scarbrough could back him up. 
The Mustang entered the HEB parking lot where officers arrested
Appellant, who was driving the car, and Norwood, the passenger. 
Both officers testified that Appellant was wearing a dark jacket at
the time of his arrest.
Based on this testimony and the record as a whole, the jury
could have determined beyond a reasonable doubt that Appellant was
the perpetrator of the crime charged. See id. Furthermore, the
record as a whole excludes every other reasonable hypothesis except
Appellant's guilt. See id. Point three is overruled.
At the conclusion of the voir dire examination, but before the
jury was sworn, Appellant made a Batson motion. He met his burden
of showing that: (1) he is a member of a cognizable racial group;
(2) the prosecutor exercised a peremptory challenge to exclude a
member of that racial group from the jury; and (3) Barbara Holmes
was one of only three blacks within the "strike zone," and that one
of the three blacks was stricken for cause. See Batson v,
Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). 
The prosecutors explained their reasons for striking Holmes as
follows:
Your Honor, in response, the State of course denies that
we excluded anyone on the basis of race from the jury
selection process. There were only two black members of the
panel subject to peremptory strikes. The State did exercise
a peremptory strike on one black person. Mrs. Holmes, to
which the defense refers, is a young, black female who was
inattentive throughout the entire voir dire process, not only
for the State but for the defense. She continually chewed
gum, looked around the room, did not pay attention to
questions that were asked of any juror, much less herself. 
She is likely because of her age to be weak on the punishment
issue, and the State excluded her on those bases, and not
because of her being a member of a minority race.
                             * * *
I don't believe there were any young white females of
approximately the same age. I do not know whether we struck
any white females for any reason that had anything to do with
race at all. I deny that we did.
Some only had one child. Most other jurors that we
struck had no children or few children. That was the factors
in striking her.
In point two, Appellant complains that the court erred when it
overruled his Batson motion.
When reviewing the decision below, the evidence must be
considered in the light most favorable to the court's rulings, and
as long as those rulings are supported by the record, they will not
be disturbed on appeal. See Keeton v. State, 749 S.W.2d 861, 870
(Tex. Crim. App. 1988). This is because the trial judge is in a
better position to observe the behavior and statements of the
veniremembers and the attorneys. Glenn v. State, 754 S.W.2d 290,
292 (Tex. App.--Houston [1st Dist.] 1988, no pet.). Once a
defendant establishes a prima facie case, the burden shifts to the
state to give "clear and reasonably specific" explanations of
"legitimate reasons" for the use of its peremptory challenges. 
Whitsey v. State, No. 1121-87, slip op. at p. 9 (Tex. Crim. App.,
May 10, 1989) (pending on rehearing).
The presence of any of the following factors suggests that a
peremptory challenge was exercised impermissibly:
1. The reason given for the peremptory challenge is not
related to the facts of the case;
2. There was a lack of questioning to the challenged juror or
a lack of meaningful questions;
3. Disparate treatment--persons with the same or similar
characteristics as the challenged juror were not struck;
4. Disparate examination of the members of the venire, i.e.,
questioning a challenged juror so as to evoke a certain
response without asking the same question of other panel
members; and
5. An explanation based on a group bias where the group trait
is not shown to apply to the challenged juror specifically.
Id. However, the state may exercise its peremptory challenges on
the basis of the prosecutor's past experience or legitimate
"hunches," as long as the motive is not racial discrimination. 
Keeton, 749 S.W.2d at 865.
Here, Appellant has failed to demonstrate to the court below
or to this court the existence of any factor which would suggest
that the prosecutors used their challenges impermissibly. The
prosecutors explained that Holmes was inattentive, and that based
on their experience she would be "weak" on punishment. Considering
the evidence in the light most favorable to the court's ruling, the
court did not err when it overruled Appellant's Batson motion. 
Point two is overruled.
At the punishment stage, Appellant pleaded "true" to both of
the enhancement allegations contained in the indictment. However,
in its charge the court informed the jury that they were to assess
punishment for aggravated robbery, and instructed them as follows:
You are instructed that the punishment for the offense of
Aggravated Robbery is by confinement in the Texas Department
of Corrections for Life, or for any term of years, not less
that five years, nor more than 99 years, and in addition
thereto, [Appellant] may be assessed a fine in any amount not
to exceed $10,000.00.
See TEX. PENAL CODE ANN. § 12.32 (Vernon Supp. 1990). The court
also instructed the jury that, because Appellant pleaded "true" to
the habitual-offender portion of the indictment, his punishment
must be assessed "at confinement in the Texas Department of
Corrections for Life, or for any term of years not less than twenty
five years, nor more than 99 years." See id. at § 12.42(d).
Appellant did not object to the punishment charge. His first
point is that the court erred when it instructed the jury on the
punishment range for both aggravated robbery and aggravated robbery
by a habitual offender. Because the punishment range for
aggravated robbery includes a possible fine, he claims that the
court submitted to the jury a penalty range more severe than that
authorized for aggravated robbery by a habitual offender. Even
though the jury assessed punishment within the lawful range for
aggravated robbery by a habitual offender, Appellant nevertheless
argues that the charge was fundamentally erroneous and deprived him
of a fair and impartial trial because it authorized the jury to
consider a fine in assessing punishment. See Uribe v. State, 688
S.W.2d 534, 539 (Tex. Crim. App. 1985); TEX. PENAL CODE ANN. §
12.42(d) (Vernon Supp. 1990). Whenever a verdict was unauthorized
by law, the rationale followed in the Uribe line of cases was that
the appellate court did not have the legal authority to reform the
verdict. Bogany v. State, 661 S.W.2d 957, 958 (Tex. Crim. App.
1983). Additionally, the appellate court would not presume that
the jury would have assessed the same punishment if the correct
instruction on punishment had been provided. Uribe, 688 S.W.2d at
538.
In 1985, article 37.10 of the Code of Criminal Procedure was
amended by the addition of subsection (b), which provides:
(b) If the jury assesses punishment in a case and in the
verdict assesses both punishment that is authorized by law for
the offense and punishment that is not authorized by law for
the offense, the court shall reform the verdict to show the
punishment authorized by law and to omit the punishment not
authorized by law. If the trial court is required to reform
a verdict under this subsection and fails to do so, the
appellate court shall reform the verdict as provided by this
subsection.
TEX. CODE CRIM. PROC. ANN. art. 37.10(b) (Vernon Supp. 1990). This
provision allows the trial or appellate court to reform a verdict
and judgment containing an unauthorized punishment, a defect which
under prior law would have rendered the verdict void. Ex parte
Johnson, 697 S.W.2d 605, 607 (Tex. Crim. App. 1985).
Here, there was no defect in the judgment because the jury's
assessment of punishment of ninety-nine years in prison was proper
under the habitual-offender law. See TEX. PENAL CODE. ANN. §
12.42(d) (Vernon Supp. 1990). Because a defect in a verdict may
now be cured by the trial or appellate court, consideration by the
jury of a more severe punishment than authorized by law is no
longer fundamental error. Therefore, the critical inquiry is
whether Appellant suffered egregious harm. See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (on rehearing).
Based on Appellant's plea of "true" to burglary of a
habitation and burglary of an office, and on the other evidence
introduced at the punishment phase, which included other prior
felony offenses committed by him, the assessment of punishment at
ninety-nine years was clearly warranted. Appellant did not suffer
egregious harm from the receipt of such punishment. Point one is
overruled.
In point four, Appellant requests supplementation of the
record to include an alleged statement made by a prosecutor
referring to the race of the parties. Nothing in the record
indicates that such a statement was ever made. Point four is
overruled because Appellant has failed to produce a record on
appeal complete enough to show error. See TEX. R. APP. P. 50(d). 
The judgment is affirmed.
 
                   
BOB L. THOMAS
DO NOT PUBLISHChief Justice