JAMIEN DEMON NICKERSON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-453-CR

JAMIEN DEMON NICKERSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372
ND
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

 I
NTRODUCTION

A jury found Jamien Demon Nickerson guilty of capital murder.  The trial court assessed punishment at life in prison.  On appeal, appellant complains in three issues that the trial court committed error by (1) not ordering appellant’s trial counsel or the district attorney to withdraw due to a conflict of interest and instead allowing the appellant to waive the conflict before trial; (2) overruling appellant’s 
Batson
 challenge; and (3) failing 
sua sponte
 to grant a directed verdict of not guilty.
 
We affirm.

II. C
ONFLICT
 
OF
 I
NTEREST

In his first issue, appellant complains the trial court erred by not ordering his trial counsel or the district attorney to withdraw due to a conflict of interest and instead allowing the appellant to waive the conflict before trial.  Specifically, appellant waived an alleged conflict between Greg Westfall, one of appellant’s trial attorneys, and his wife, Mollee Westfall, an assistant district attorney in the District Attorney’s office that prosecuted appellant.  Appellant also urges us to adopt a “different, higher standard” for capital murder cases under which
 
the defendant would not be permitted to waive such a conflict.  Appellant failed, however, to preserve the issue for appeal. 

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2).  
Taylor v. State
, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996).  Preservation of error is a systemic requirement that this court should review on its own motion.  
Martinez v. State
, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); 
Hughes v. State
, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh’g), 
cert. denied
, 511 U.S. 1152 (1994
). 

The record shows that appellant failed to lodge any objection or request in the trial court relating to withdrawal or waiver.  In fact, after being informed of the conflict of interest, the appellant signed a waiver regarding Mr. Westfall’s representation and, at the pretrial hearing, confirmed that he had waived any conflict.  While appellant claimed for the first time at oral argument that the waiver amounted to fundamental error, he did not allege, argue, or cite any authority for that proposition in his brief or at oral argument.  For all of these reasons, we hold that appellant failed to preserve any error relating to  withdrawal or waiver.  We overrule appellant’s first issue.

III. B
ATSON
 C
HALLENGE

In his second issue, appellant complains that the trial court erred in overruling his 
Batson
(footnote: 1) challenge and allowing the State to exercise peremptory strike based on race.  A three-step process is used to determine whether a prosecutor exercised his peremptory strikes based on race:  (1) the opponent of a peremptory challenge must make out a prima facie case of racial discrimination; (2) the burden then shifts to the proponent of the strike to come forward with a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.  
Purkett v. Elem
, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770-71 (1995); 
Yarborough v. State
, 983 S.W.2d 352, 354 (Tex. App.—Fort Worth 1998, no pet.) (Yarborough I).

“The second step of this process does not demand an explanation that is persuasive, or even plausible.  [Instead], ‘the issue is the facial validity of the prosecutor’s explanation.  
Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.’”
 Purkett
, 514 U.S. at 767-68, 115 S. Ct at 1771 (quoting 
Hernandez v. New York
, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1865-66 (1991)).  Thus, any reason offered by the State, as long as it is facially valid and not inherently discriminatory, is sufficient to rebut the defendant’s prima facie case of intentional discrimination.
  See id
.  The defendant must then establish that the race-neutral reasons articulated by the State are in fact a pretext for purposeful discrimination.  
See
 
Pondexter v. State
, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).

When reviewing a 
Batson
 claim on appeal, we must determine whether the trial court's findings were “clearly erroneous” by examining the evidence in the light most favorable to the trial court's ruling.  
See id.
  The trial court's determination is a finding of fact that must be accorded great deference on appeal.  
See
 
Chambers v. State
, 866 S.W.2d 9, 23 (Tex. Crim. App.1993),
 cert. denied
, 511 U.S. 1100 (1994).
  Here, it is undisputed that the appellant made a prima facie showing that the State used peremptory challenges to exclude certain veniremembers from jury service because of their race.  Therefore, we must first determine whether the record shows the State gave facially valid, race-neutral reasons to strike the venire members and, if so, whether appellant met his burden of establishing that the State’s reasons were a mere pretext to purposeful discrimination. 

The venire panel in this case was comprised of sixty persons.  The record demonstrates that the original venire had five reachable African-American members.  The parties agree that of these African-American venire members, Jerome Spellman and Christal Griffin were peremptorily challenged by the State and the remaining three served on the jury. 
 The appellant challenged both of the peremptory strikes on 
Batson
 grounds, and the trial court held a 
Batson
 hearing. 

In regard to Spellman, the prosecutor explained that he peremptorily challenged him because he had a pending charge for assault causing bodily injury to a family member that was discovered after running a criminal history background check.  
See Anderson v. State
, 758 S.W.2d 676, 680 (Tex. App.—Fort Worth 1988, pet. ref’d) (holding peremptory challenge based on veniremember’s trouble with the law is race-neutral explanation).  The computer printout the prosecutor used as the basis of this explanation is included in the record on appeal. 

The prosecutor stated that he also ran criminal history background checks on other veniremembers and used a peremptory strike to remove the only other remaining veniremember with a pending criminal case, a Caucasian man who was found to have a recent DWI charge that he failed to mention in voir dire.  
See Keeton v. State
, 749 S.W.2d 861, 868 (Tex. Crim. App. 1998) (holding peremptory challenge of nonminority veniremember with a similar characteristic supports trial court’s finding of a race-neutral explanation).  While no evidence was offered, other than an affirmation by the prosecutor, that the alleged criminal history was that of veniremember Spellman, appellant’s counsel did not rebut the State’s reason, but rested on his previous argument that Spellman was African-American, had not been questioned in voir dire, and nothing else made him stand out. 

In regard to Griffin, the prosecutor explained that he peremptorily challenged her because he did not understand her written answer to the question on the jury questionnaire asking “Is there any reason you should not serve on a criminal case jury?” or the oral response she gave when asked to clarify the answer.  The prosecutor further explained that he peremptorily challenged Griffin because another prosecutor observed her weeping during the voir dire examination.
  See Yarborough I
, 983 S.W.2d at 358-59 (holding
 peremptory challenge based on veniremember’s demeanor is race-neutral explanation).
  
The trial court confirmed the rambling nature of the response Griffin gave to the prosecutor regarding her service on a criminal jury and noted that it had observed her demeanor. 
 Appellant’s counsel did not rebut the State’s reasons, but again rested on his previous argument that Griffin was an African-American, no “meaningful questioning” had taken place on the record, and nothing else made her stand out.  

Based on our review of the evidence, we hold that the State gave facially valid, race-neutral reasons for striking Spellman and Griffin and that these reasons are supported by the record.  The State included the individual questionnaires in the record to verify the reasons offered and attached the criminal background report on Spellman.  Furthermore, regarding the prosecutor's reasons for striking Griffin (rambling response and weeping) and Spellman (defendant in pending criminal charge), each of these reasons was undisputed by opposing counsel and the trial court.  As the Court of Criminal Appeals stated in 
Yarborough v. State
, “A counsel's statement about an occurrence in the courtroom, which was made for the purposes of the record, recorded by the court reporter, undisputed by the opposing counsel, and unquestioned and unqualified by the judge in whose presence the statement was made, establishes the occurrence for purposes of the appellate record.”  947 S.W.2d 892, 895 (Tex. Crim. App. 1997) (Yarborough II); 
Yarborough I
, 983 S.W.2d at 357.
 
 Thus, the State's observations regarding Griffin’s responses and demeanor and its claim that Spellman was the man named in the criminal history report were established for the record.

Because the reasons given by the State were not inherently racially discriminatory or particular to any race, the State met its burden of providing race-neutral reasons for exercising each of the challenged strikes.  Thus, we must determine whether appellant met his burden of proof to establish that the State's reasons were a mere pretext for purposeful discrimination.  
See
 
Yarborough
 
I
, 983 S.W.2d at 357.  In other words, we must decide whether the trial court erred at step three of the 
Batson
 inquiry, in finding that the reasons given by the State were not racially motivated.  
Id
.

Absent some evidence in the record to rebut the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate.  
See Pondexter
, 942 S.W.2d at 581; 
Chambers
, 866 S.W.2d at 25.  To determine whether the trial court's findings are supported by the record, we must review (1) the racial makeup of the venire, (2) the voir dire examination, (3) the prosecutor's explanations, (4) the appellant's rebuttal and impeaching evidence, (5) the quantity and quality of either party's examination of the challenged venire member, (6) whether the 
Batson 
movant cross-examined the counsel who made the peremptory challenge, and (7) whether the judge was asked to rule on any conflict of fact.  
See
 
Yarborough II
, 947 S.W.2d at 896; 
Chambers
, 866 S.W.2d at 23.  In addition, where the reason given involves a venire member's demeanor or appearance, the court should also consider whether the 
Batson
 movant rebutted the description of the venire member and whether the Batson movant proved that venire members of similar demeanor were not struck.  
See Yarborough
 
II
, 947 S.W.2d at 896. Having considered a number of these factors above, we now turn to the remainder.

Here, the appellant never cross-examined the prosecutor to invalidate any of the grounds given by the State. Likewise, he failed to dispute the State’s characterization of Griffin’s demeanor.  Regarding Spellman, appellant did not ask to review background checks on other venire members, offer any evidence that the State had run these checks only on minorities, or argue that  veniremember Spellman was not the man named in the criminal history report. Finally, at the 
Batson 
hearing,
 
appellant made no attempt to show that the State’s explanation was merely pretextual.  
See
 
Glenn v. State
, 754 S.W.2d 290, 291-92 (Tex. App.—Houston [1
st
 Dist.] 1988, no pet.).

Ultimately, appellant fails to present any argument other than the fact that the State used two of its peremptory strikes on minority members, whom appellant contends were either not questioned at all or not “meaningfully questioned” by the State to support his contention that the State's race-neutral explanations were a mere pretext for its purposeful discrimination.  In view of the record in this case, including the State's clear and detailed explanations and appellant's failure to formulate a convincing argument to rebut the State's facially valid, race-neutral reasons, and according due deference to the trial court's findings, we cannot say that the trial court's decision was clearly erroneous.  We overrule appellant’s second issue.

IV. S
UFFICIENCY
 
OF
 E
VIDENCE

In his third issue, appellant complains the trial court improperly failed to 
sua sponte
 grant a directed verdict of not guilty because the evidence was insufficient to sustain a verdict of guilty as to each element of the offense of capital murder.  
Appellant contends that the only evidence connecting him to the shooting was the uncorroborated testimony of an accomplice witness, which is insufficient to sustain his conviction.  A challenge to a trial court’s ruling on a motion for an instructed verdict is actually a challenge to the legal sufficiency of the evidence to support the conviction. 
 Madden v. State
, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990), 
cert. denied
, 499 U.S. 954 (1991); 
Franks v. State
, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.).  Challenges to the legal sufficiency of the evidence need not be raised in the trial court to be preserved for appellate review.  
Rankin v. State
, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).
  Therefore, we will review the legal sufficiency of the evidence supporting his conviction. 

A. Evidence Presented 

A person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual, and he intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction, retaliation, or terroristic threat under the terroristic threat statute.
  Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon Supp. 2004).  At trial, the State elicited testimony from a number of witnesses to show appellant committed capital murder.

Derrick Hornsby testified that on Thanksgiving Day 2000, he, the appellant, and Patrick Woodard drove around Fort Worth looking for a car to steal and take to a chop shop.  The men saw several cars worth taking, but decided it was too easy to be seen during the daytime and returned to the home of Vernetta Woodard, Patrick Woodard’s grandmother, on Burchill Street. 
 Saul Lerma testified that he lent his brother Juan Lerma his green 1994 Camaro with new rims and tires to go visit some friends later that evening.  While driving back to the Burchill residence from his girlfriend’s apartment by himself, Hornsby saw a man (Juan Lerma) at a carwash on East Rosedale Avenue talking on a pay phone and noticed his car.

At the Burchill residence, Hornsby told appellant, Misty Rice, and Edwanna Williams about the man at the carwash driving a Camaro with special rims.
  According to those witnesses, appellant retrieved a gun and left with Hornsby.  Hornsby testified that when he drove past the carwash to let appellant out, appellant grabbed his gun and a mask and ran toward the carwash with the gun inside his coat.  After driving around the block, Hornsby watched appellant point his gun at the man and heard a gun shot.  Appellant ran back to Hornsby’s car, tossed his gun into the backseat, told Hornsby that “he shot the dude,” and went back to retrieve the car. 
 As Hornsby drove away, he saw the man’s head leaning against the steering wheel.  Hornsby returned to the Burchill residence and announced that appellant had “gun faced” the man.  Rice testified Hornsby was carrying the gun appellant had previously taken with him.  Soon after, Hornsby, Rice, and Williams, watched appellant drive up in the Camaro and park it in the backyard.  

Williams testified that appellant told her to come get his coat and put it in cold water.  While soaking the coat in the bathtub, she saw “a lot of blood” being rinsed out of it.  Williams also testified that appellant later tried to burn the clothes he was wearing during the robbery in the backyard barbeque pit.  Appellant later told Rice and Williams that he had shot the man driving the Camaro.  Williams testified that appellant and Woodard spent the remainder of the night trying to remove the wheels from the Camaro.

That night, Officer Donaldson found the body of Juan Lerma in the parking lot of the carwash on East Rosedale Avenue.  The next morning, Vernetta Woodard and Jaquita Cook returned to the Burchill residence and found appellant in the backyard trying to take the wheels off of a green Camaro that was partially covered.  Ms. Woodard told appellant to get the car out of her backyard.  When she later returned from work, the Camaro was gone.

On November 25, 2000, Howard Allred discovered a green Camaro on jacks in his backyard with its tires and rims missing with the exception of one doughnut tire.  Saul Lerma testified that, when his Camaro was returned, it was missing its tire rims and the car’s seats and floorboards were bloody.  Dr. Gary Sisler, the medical examiner, performed an autopsy on Juan Lerma, determined that the cause of Lerma’s death was a gunshot wound to his face, and classified the death as a homicide.

B. Evidence Corroborating Accomplice Testimony

The jury charge included an accomplice instruction regarding Hornsby.  
Article 38.14 of the Code of Criminal Procedure provides, “A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.”  T
EX.
 C
ODE
 C
RIM.
 P
ROC.
 A
NN.
 art. 38.14 (Vernon 1979).  In conducting a sufficiency review under the accomplice-witness rule, the reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to ascertain if there is any evidence that tends to connect the accused with the commission of the crime. 
 Solomon v. State
, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001);
 Hernandez v. State
, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997).  “Tendency to connect” rather than rational sufficiency is the standard:  the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt.  
Solomon
, 49 S.W.3d at 361; 
Cathey v. State
, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), 
cert. denied
, 528 U.S. 1082 (2000).  Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense.  
Cathey
, 992 S.W.2d at 462.  The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards.  
Id. 
at 462-63.  
To satisfy the accomplice-witness rule there simply needs to be other evidence tending to connect the accused to the commission of the offense.  In capital murder cases, the accomplice-witness rule does not require corroboration concerning the elements of the aggravating offense, i.e., the elements that distinguish murder from capital murder. 
 McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997), 
cert. denied
, 522 U.S. 844 (1997).   Excluding Hornsby’s testimony, the non-accomplice evidence in this case showed that (1) appellant took a gun to rob a man at the carwash; (2) Juan Lerma was found dead at a carwash; (3) appellant was seen driving Lerma’s green Camaro and later trying to remove its wheels; (4) appellant admitted to shooting the man driving the Camaro; (5) appellant’s coat was bloody; (6) appellant tried to burn the clothes he was wearing during the robbery in a backyard barbeque pit; and (7) Saul Lerma identified the bloody and rimless green Camaro that was recovered as the car he had lent his brother.  

First, appellant’s admission to Rice and Williams that he shot the man driving the Camaro corroborated Hornsby’s testimony.  
See Beets v. State
, 767 S.W.2d 711, 724 (Tex. Crim. App. 1987) (holding defendant’s admission that she killed victim corroborated accomplice’s testimony), 
cert. denied
, 492 U.S. 912 (1989).  Second, appellant’s possession of Lerma’s Camaro corroborates Hornsby’s testimony. 
 See 
Cockrum v. State
, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988), 
cert. denied
, 489 U.S. 1072 (1989); 
see also
 
Lyman v. State
, 540 S.W.2d 711, 714 (Tex. Crim. App. 1976) (
holding possession of fruits of crime by defendant corroborated accomplice’s testimony).  Finally, appellant’s return from the carwash in bloody clothes corroborates Hornsby’s testimony.  
See Alvarado v. State
, 816 S.W.2d 792, 796 (Tex. App.—Corpus Christi 1991), 
aff’d as modified,
 840 S.W.2d 442 (Tex. Crim. App. 1992).  Thus, the non-accomplice evidence corroborates Hornsby’s testimony and tends to connect appellant to the offense. 

Appellant contends that Williams was also an accomplice, whose testimony required corroboration, and that she lacked credibility because she testified in exchange for a plea bargain in another case and admitted to giving materially different statements to the police. 
 A co-indictee for the same offense is an accomplice as a matter of law. 
 Burns v. State
, 703 S.W.2d 649, 651 (Tex. Crim. App. 1985).  This includes a witness who is indicted for the same offense, but is promised immunity if she testifies against the accused.  
Blake v. State
, 971 S.W.2d 451, 462 (Tex. Crim. App. 1998).
  
However, being present at the scene, acting as accessory after the fact, or having knowledge of the crime and concealing it, is not sufficient to make a witness an accomplice.  
Id.
 at 454; 
Harris v. State
, 738 S.W.2d 207, 215-16 (Tex. Crim. App. 1986), 
cert. denied
, 484 U.S. 872 (1987).
  To be an accomplice witness, there must be some affirmative act on the witness’s part to assist in the commission of the offense.  
Kutzner v. State
, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999); 
McFarland v. State
, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996), 
cert. denied
, 519 U.S. 1119 (1997)
.
  
A witness is not deemed an accomplice because she knew of the crime but failed to disclose it, or even concealed it. 
 Russell v. State
, 598 S.W.2d 238, 249 (Tex. Crim. App. 1980), 
cert. denied
, 449 U.S. 1003 (1980).
  

The evidence did not show that Williams was an accomplice in this case. 
See Solomon
, 49 S.W.3d at 362.  The record shows that she did not assist in or encourage the commission of the crime and that she was never charged as being an accomplice, but only washed out appellant’s jacket after the crime was committed.  Therefore, her testimony could be used as corroboration.  
Id
.  Moreover, the credibility of a witness is an issue for a jury to decide, and credibility attacks on a witness do not defeat the corroborating effect of the witness’s testimony.  
Id
.  The Court of Criminal Appeals has rejected such attempts to superimpose a legal or factual sufficiency review upon the accomplice-witness standard.  
Id.  
Therefore, the non-accomplice evidence sufficiently corroborated Hornsby’s testimony. 

C. Evidence Supporting Conviction 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).
 
 The standard of review is the same for direct and circumstantial evidence cases.
 
 Burden
, 555 S.W.3d at 613;
 Kutzner
, 994 S.W.2d at 184.

Here, the evidence shows that (1) appellant was looking for a car to steal; (2) he went to the carwash to steal Lerma’s car; (3) he shot and killed Lerma; and (4) he drove away in Lerma’s car and later removed parts to sell. Because the evidence shows that appellant intentionally killed Lerma while in the course of robbing him, we hold the evidence is legally sufficient to support his capital murder conviction. 
 See
 
Tex. Penal Code Ann.
 § 19.03(a)(2).  We overrule appellant’s third issue.

V. C
ONCLUSION
 

Having overruled appellant’s issues on appeal, we affirm the trial court’s judgment.
 

SAM J. DAY

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  December 4, 2003

FOOTNOTES
1:
Batson v. Kentucky
, 476 U.S. 79, 106 S. Ct. 1712 (1986).