COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-453-CR
 
JAMIEN DEMON NICKERSON                                                  APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM THE 
372ND DISTRICT COURT OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        A jury found Jamien Demon Nickerson guilty of capital murder. The trial 
court assessed punishment at life in prison. On appeal, appellant complains in 
three issues that the trial court committed error by (1) not ordering appellant’s 
trial counsel or the district attorney to withdraw due to a conflict of interest and 
instead allowing the appellant to waive the conflict before trial; (2) overruling 
appellant’s Batson challenge; and (3) failing sua sponte to grant a directed 
verdict of not guilty. We affirm. 
II. CONFLICT OF INTEREST 
        In his first issue, appellant complains the trial court erred by not ordering 
his trial counsel or the district attorney to withdraw due to a conflict of interest 
and instead allowing the appellant to waive the conflict before trial. 
Specifically, appellant waived an alleged conflict between Greg Westfall, one 
of appellant’s trial attorneys, and his wife, Mollee Westfall, an assistant district 
attorney in the District Attorney’s office that prosecuted appellant. Appellant 
also urges us to adopt a “different, higher standard” for capital murder cases 
under which the defendant would not be permitted to waive such a conflict. 
Appellant failed, however, to preserve the issue for appeal. 
        To preserve a complaint for our review, a party must have presented to 
the trial court a timely request, objection, or motion that states the specific 
grounds for the desired ruling if they are not apparent from the context of the 
request, objection, or motion. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 
1070 (1999). Further, the trial court must have ruled on the request, objection, 
or motion, either expressly or implicitly, or the complaining party must have 
objected to the trial court’s refusal to rule. Tex. R. App. P. 33.1(a)(2). Taylor 
v. State, 939 S.W.2d 148, 155 (Tex. Crim. App. 1996). Preservation of error 
is a systemic requirement that this court should review on its own motion. 
Martinez v. State, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); Hughes 
v. State, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993) (op. on reh’g), cert. 
denied, 511 U.S. 1152 (1994). 
        The record shows that appellant failed to lodge any objection or request 
in the trial court relating to withdrawal or waiver. In fact, after being informed 
of the conflict of interest, the appellant signed a waiver regarding Mr. Westfall’s 
representation and, at the pretrial hearing, confirmed that he had waived any 
conflict. While appellant claimed for the first time at oral argument that the 
waiver amounted to fundamental error, he did not allege, argue, or cite any 
authority for that proposition in his brief or at oral argument. For all of these 
reasons, we hold that appellant failed to preserve any error relating to 
withdrawal or waiver. We overrule appellant’s first issue. 
III. BATSON CHALLENGE
        In his second issue, appellant complains that the trial court erred in 
overruling his Batson 
 

 challenge and allowing the State to exercise peremptory 
strike based on race. A three-step process is used to determine whether a
prosecutor exercised his peremptory strikes based on race: (1) the opponent
of a peremptory challenge must make out a prima facie case of racial
discrimination; (2) the burden then shifts to the proponent of the strike to come
forward with a race-neutral explanation; and (3) if a race-neutral explanation is
tendered, the trial court must then decide whether the opponent of the strike
has proved purposeful racial discrimination. Purkett v. Elem, 514 U.S. 765,
767, 115 S.Ct. 1769, 1770-71 (1995); Yarborough v. State, 983 S.W.2d 352,
354 (Tex. App.—Fort Worth 1998, no pet.) (Yarborough I).
        “The second step of this process does not demand an explanation that 
is persuasive, or even plausible. [Instead], ‘the issue is the facial validity of the 
prosecutor’s explanation. Unless a discriminatory intent is inherent in the 
prosecutor's explanation, the reason offered will be deemed race neutral.’” 
Purkett, 514 U.S. at 767-68, 115 S. Ct at 1771 (quoting Hernandez v. New 
York, 500 U.S. 352, 358-59, 111 S. Ct. 1859, 1865-66 (1991)). Thus, any 
reason offered by the State, as long as it is facially valid and not inherently 
discriminatory, is sufficient to rebut the defendant’s prima facie case of 
intentional discrimination. See id. The defendant must then establish that the 
race-neutral reasons articulated by the State are in fact a pretext for purposeful 
discrimination. See Pondexter v. State, 942 S.W.2d 577, 581 (Tex. Crim. App. 
1996), cert. denied, 522 U.S. 825 (1997). 
        When reviewing a Batson claim on appeal, we must determine whether 
the trial court's findings were “clearly erroneous” by examining the evidence in 
the light most favorable to the trial court's ruling. See id. The trial court's 
determination is a finding of fact that must be accorded great deference on 
appeal. See Chambers v. State, 866 S.W.2d 9, 23 (Tex. Crim. App.1993), 
cert. denied, 511 U.S. 1100 (1994). Here, it is undisputed that the appellant 
made a prima facie showing that the State used peremptory challenges to 
exclude certain veniremembers from jury service because of their race. 
Therefore, we must first determine whether the record shows the State gave 
facially valid, race-neutral reasons to strike the venire members and, if so, 
whether appellant met his burden of establishing that the State’s reasons were 
a mere pretext to purposeful discrimination. 
        The venire panel in this case was comprised of sixty persons. The record 
demonstrates that the original venire had five reachable African-American 
members. The parties agree that of these African-American venire members, 
Jerome Spellman and Christal Griffin were peremptorily challenged by the State 
and the remaining three served on the jury. The appellant challenged both of 
the peremptory strikes on Batson grounds, and the trial court held a Batson 
hearing. 
        In regard to Spellman, the prosecutor explained that he peremptorily 
challenged him because he had a pending charge for assault causing bodily 
injury to a family member that was discovered after running a criminal history 
background check. See Anderson v. State, 758 S.W.2d 676, 680 (Tex. 
App.—Fort Worth 1988, pet. ref’d) (holding peremptory challenge based on 
veniremember’s trouble with the law is race-neutral explanation). The computer 
printout the prosecutor used as the basis of this explanation is included in the 
record on appeal. 
        The prosecutor stated that he also ran criminal history background checks 
on other veniremembers and used a peremptory strike to remove the only other 
remaining veniremember with a pending criminal case, a Caucasian man who 
was found to have a recent DWI charge that he failed to mention in voir dire. 
See Keeton v. State, 749 S.W.2d 861, 868 (Tex. Crim. App. 1998) (holding 
peremptory challenge of nonminority veniremember with a similar characteristic 
supports trial court’s finding of a race-neutral explanation). While no evidence 
was offered, other than an affirmation by the prosecutor, that the alleged 
criminal history was that of veniremember Spellman, appellant’s counsel did not 
rebut the State’s reason, but rested on his previous argument that Spellman 
was African-American, had not been questioned in voir dire, and nothing else 
made him stand out. 
        In regard to Griffin, the prosecutor explained that he peremptorily 
challenged her because he did not understand her written answer to the 
question on the jury questionnaire asking “Is there any reason you should not 
serve on a criminal case jury?” or the oral response she gave when asked to 
clarify the answer. The prosecutor further explained that he peremptorily 
challenged Griffin because another prosecutor observed her weeping during the 
voir dire examination. See Yarborough I, 983 S.W.2d at 358-59 (holding 
peremptory challenge based on veniremember’s demeanor is race-neutral 
explanation). The trial court confirmed the rambling nature of the response 
Griffin gave to the prosecutor regarding her service on a criminal jury and noted 
that it had observed her demeanor. Appellant’s counsel did not rebut the 
State’s reasons, but again rested on his previous argument that Griffin was an 
African-American, no “meaningful questioning” had taken place on the record, 
and nothing else made her stand out. 
        Based on our review of the evidence, we hold that the State gave facially 
valid, race-neutral reasons for striking Spellman and Griffin and that these 
reasons are supported by the record. The State included the individual 
questionnaires in the record to verify the reasons offered and attached the 
criminal background report on Spellman. Furthermore, regarding the 
prosecutor's reasons for striking Griffin (rambling response and weeping) and 
Spellman (defendant in pending criminal charge), each of these reasons was 
undisputed by opposing counsel and the trial court. As the Court of Criminal 
Appeals stated in Yarborough v. State, “A counsel's statement about an 
occurrence in the courtroom, which was made for the purposes of the record, 
recorded by the court reporter, undisputed by the opposing counsel, and 
unquestioned and unqualified by the judge in whose presence the statement 
was made, establishes the occurrence for purposes of the appellate record.” 
947 S.W.2d 892, 895 (Tex. Crim. App. 1997) (Yarborough II); Yarborough I, 
983 S.W.2d at 357. Thus, the State's observations regarding Griffin’s 
responses and demeanor and its claim that Spellman was the man named in the 
criminal history report were established for the record. 
        Because the reasons given by the State were not inherently racially 
discriminatory or particular to any race, the State met its burden of providing 
race-neutral reasons for exercising each of the challenged strikes. Thus, we 
must determine whether appellant met his burden of proof to establish that the 
State's reasons were a mere pretext for purposeful discrimination. See 
Yarborough I, 983 S.W.2d at 357. In other words, we must decide whether 
the trial court erred at step three of the Batson inquiry, in finding that the 
reasons given by the State were not racially motivated. Id. 
        Absent some evidence in the record to rebut the State's race-neutral 
explanation, we will not disturb the trial court's finding that the State's 
explanation is legitimate. See Pondexter, 942 S.W.2d at 581; Chambers, 866 
S.W.2d at 25. To determine whether the trial court's findings are supported 
by the record, we must review (1) the racial makeup of the venire, (2) the voir 
dire examination, (3) the prosecutor's explanations, (4) the appellant's rebuttal 
and impeaching evidence, (5) the quantity and quality of either party's 
examination of the challenged venire member, (6) whether the Batson movant 
cross-examined the counsel who made the peremptory challenge, and (7) 
whether the judge was asked to rule on any conflict of fact. See Yarborough 
II, 947 S.W.2d at 896; Chambers, 866 S.W.2d at 23. In addition, where the 
reason given involves a venire member's demeanor or appearance, the court 
should also consider whether the Batson movant rebutted the description of the 
venire member and whether the Batson movant proved that venire members of 
similar demeanor were not struck. See Yarborough II, 947 S.W.2d at 896. 
Having considered a number of these factors above, we now turn to the 
remainder.
        Here, the appellant never cross-examined the prosecutor to invalidate any 
of the grounds given by the State. Likewise, he failed to dispute the State’s 
characterization of Griffin’s demeanor. Regarding Spellman, appellant did not 
ask to review background checks on other venire members, offer any evidence 
that the State had run these checks only on minorities, or argue that 
veniremember Spellman was not the man named in the criminal history report. 
Finally, at the Batson hearing, appellant made no attempt to show that the 
State’s explanation was merely pretextual. See Glenn v. State, 754 S.W.2d 
290, 291-92 (Tex. App.—Houston [1st Dist.] 1988, no pet.). 
        Ultimately, appellant fails to present any argument other than the fact 
that the State used two of its peremptory strikes on minority members, whom 
appellant contends were either not questioned at all or not “meaningfully 
questioned” by the State to support his contention that the State's race-neutral 
explanations were a mere pretext for its purposeful discrimination. In view of 
the record in this case, including the State's clear and detailed explanations and 
appellant's failure to formulate a convincing argument to rebut the State's 
facially valid, race-neutral reasons, and according due deference to the trial 
court's findings, we cannot say that the trial court's decision was clearly 
erroneous. We overrule appellant’s second issue. 
IV. SUFFICIENCY OF EVIDENCE
         In his third issue, appellant complains the trial court improperly failed to 
sua sponte grant a directed verdict of not guilty because the evidence was 
insufficient to sustain a verdict of guilty as to each element of the offense of 
capital murder. Appellant contends that the only evidence connecting him to 
the shooting was the uncorroborated testimony of an accomplice witness,
which is insufficient to sustain his conviction. A challenge to a trial court’s
ruling on a motion for an instructed verdict is actually a challenge to the legal
sufficiency of the evidence to support the conviction. Madden v. State, 799
S.W.2d 683, 686 (Tex. Crim. App. 1990), cert. denied, 499 U.S. 954 (1991);
Franks v. State, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.). 
Challenges to the legal sufficiency of the evidence need not be raised in the trial
court to be preserved for appellate review. Rankin v. State, 46 S.W.3d 899,
901 (Tex. Crim. App. 2001). Therefore, we will review the legal sufficiency of
the evidence supporting his conviction. 
A. Evidence Presented 
        A person commits the offense of capital murder if he intentionally or 
knowingly causes the death of an individual, and he intentionally commits the 
murder in the course of committing or attempting to commit kidnapping, 
burglary, robbery, aggravated sexual assault, arson, obstruction, retaliation, or 
terroristic threat under the terroristic threat statute. Tex. Penal Code Ann. § 
19.03(a)(2) (Vernon Supp. 2004). At trial, the State elicited testimony from a 
number of witnesses to show appellant committed capital murder. 
        Derrick Hornsby testified that on Thanksgiving Day 2000, he, the 
appellant, and Patrick Woodard drove around Fort Worth looking for a car to 
steal and take to a chop shop. The men saw several cars worth taking, but 
decided it was too easy to be seen during the daytime and returned to the 
home of Vernetta Woodard, Patrick Woodard’s grandmother, on Burchill Street. 
Saul Lerma testified that he lent his brother Juan Lerma his green 1994 Camaro 
with new rims and tires to go visit some friends later that evening. While 
driving back to the Burchill residence from his girlfriend’s apartment by himself, 
Hornsby saw a man (Juan Lerma) at a carwash on East Rosedale Avenue 
talking on a pay phone and noticed his car. 
        At the Burchill residence, Hornsby told appellant, Misty Rice, and 
Edwanna Williams about the man at the carwash driving a Camaro with special 
rims. According to those witnesses, appellant retrieved a gun and left with
Hornsby. Hornsby testified that when he drove past the carwash to let
appellant out, appellant grabbed his gun and a mask and ran toward the
carwash with the gun inside his coat. After driving around the block, Hornsby
watched appellant point his gun at the man and heard a gun shot. Appellant
ran back to Hornsby’s car, tossed his gun into the backseat, told Hornsby that
“he shot the dude,” and went back to retrieve the car. As Hornsby drove
away, he saw the man’s head leaning against the steering wheel. Hornsby
returned to the Burchill residence and announced that appellant had “gun faced”
the man. Rice testified Hornsby was carrying the gun appellant had previously
taken with him. Soon after, Hornsby, Rice, and Williams, watched appellant
drive up in the Camaro and park it in the backyard. 
        Williams testified that appellant told her to come get his coat and put it 
in cold water. While soaking the coat in the bathtub, she saw “a lot of blood” 
being rinsed out of it. Williams also testified that appellant later tried to burn 
the clothes he was wearing during the robbery in the backyard barbeque pit. 
Appellant later told Rice and Williams that he had shot the man driving the 
Camaro. Williams testified that appellant and Woodard spent the remainder of 
the night trying to remove the wheels from the Camaro. 
        That night, Officer Donaldson found the body of Juan Lerma in the 
parking lot of the carwash on East Rosedale Avenue. The next morning, 
Vernetta Woodard and Jaquita Cook returned to the Burchill residence and 
found appellant in the backyard trying to take the wheels off of a green Camaro 
that was partially covered. Ms. Woodard told appellant to get the car out of 
her backyard. When she later returned from work, the Camaro was gone. 
        On November 25, 2000, Howard Allred discovered a green Camaro on 
jacks in his backyard with its tires and rims missing with the exception of one 
doughnut tire. Saul Lerma testified that, when his Camaro was returned, it was 
missing its tire rims and the car’s seats and floorboards were bloody. Dr. Gary 
Sisler, the medical examiner, performed an autopsy on Juan Lerma, determined 
that the cause of Lerma’s death was a gunshot wound to his face, and 
classified the death as a homicide. 
B. Evidence Corroborating Accomplice Testimony 
The jury charge included an accomplice instruction regarding Hornsby. 
Article 38.14 of the Code of Criminal Procedure provides, “A conviction cannot
be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.” TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). In conducting
a sufficiency review under the accomplice-witness rule, the reviewing court
must eliminate the accomplice testimony from consideration and then examine
the remaining portions of the record to ascertain if there is any evidence that
tends to connect the accused with the commission of the crime. Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997). “Tendency to connect” rather than
rational sufficiency is the standard: the corroborating evidence need not be
sufficient by itself to establish guilt beyond a reasonable doubt. Solomon, 49
S.W.3d at 361; Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999), cert. denied, 528 U.S. 1082 (2000). Nor is it necessary for the
corroborating evidence to directly link the accused to the commission of the
offense. Cathey, 992 S.W.2d at 462. The accomplice-witness rule is a
statutorily imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency standards. 
Id. at 462-63. To satisfy the accomplice-witness rule there simply needs to be 
other evidence tending to connect the accused to the commission of the 
offense. In capital murder cases, the accomplice-witness rule does not require 
corroboration concerning the elements of the aggravating offense, i.e., the 
elements that distinguish murder from capital murder. McDuff v. State, 939 
S.W.2d 607, 613 (Tex. Crim. App. 1997), cert. denied, 522 U.S. 844 (1997). 
        Excluding Hornsby’s testimony, the non-accomplice evidence in this case 
showed that (1) appellant took a gun to rob a man at the carwash; (2) Juan 
Lerma was found dead at a carwash; (3) appellant was seen driving Lerma’s 
green Camaro and later trying to remove its wheels; (4) appellant admitted to 
shooting the man driving the Camaro; (5) appellant’s coat was bloody; (6) 
appellant tried to burn the clothes he was wearing during the robbery in a 
backyard barbeque pit; and (7) Saul Lerma identified the bloody and rimless 
green Camaro that was recovered as the car he had lent his brother. 
        First, appellant’s admission to Rice and Williams that he shot the man 
driving the Camaro corroborated Hornsby’s testimony. See Beets v. State, 767 
S.W.2d 711, 724 (Tex. Crim. App. 1987) (holding defendant’s admission that 
she killed victim corroborated accomplice’s testimony), cert. denied, 492 U.S. 
912 (1989). Second, appellant’s possession of Lerma’s Camaro corroborates 
Hornsby’s testimony. See Cockrum v. State, 758 S.W.2d 577, 581 (Tex. 
Crim. App. 1988), cert. denied, 489 U.S. 1072 (1989); see also Lyman v.
State, 540 S.W.2d 711, 714 (Tex. Crim. App. 1976) (holding possession of
fruits of crime by defendant corroborated accomplice’s testimony). Finally,
appellant’s return from the carwash in bloody clothes corroborates Hornsby’s
testimony. See Alvarado v. State, 816 S.W.2d 792, 796 (Tex. App.—Corpus
Christi 1991), aff’d as modified, 840 S.W.2d 442 (Tex. Crim. App. 1992). 
Thus, the non-accomplice evidence corroborates Hornsby’s testimony and tends
to connect appellant to the offense. 
        Appellant contends that Williams was also an accomplice, whose 
testimony required corroboration, and that she lacked credibility because she 
testified in exchange for a plea bargain in another case and admitted to giving 
materially different statements to the police. A co-indictee for the same offense 
is an accomplice as a matter of law. Burns v. State, 703 S.W.2d 649, 651
(Tex. Crim. App. 1985). This includes a witness who is indicted for the same
offense, but is promised immunity if she testifies against the accused. Blake
v. State, 971 S.W.2d 451, 462 (Tex. Crim. App. 1998). However, being
present at the scene, acting as accessory after the fact, or having knowledge
of the crime and concealing it, is not sufficient to make a witness an
accomplice. Id. at 454; Harris v. State, 738 S.W.2d 207, 215-16 (Tex. Crim.
App. 1986), cert. denied, 484 U.S. 872 (1987). To be an accomplice witness,
there must be some affirmative act on the witness’s part to assist in the
commission of the offense. Kutzner v. State, 994 S.W.2d 180, 187 (Tex.
Crim. App. 1999); McFarland v. State, 928 S.W.2d 482, 514 (Tex. Crim. App.
1996), cert. denied, 519 U.S. 1119 (1997). A witness is not deemed an
accomplice because she knew of the crime but failed to disclose it, or even
concealed it. Russell v. State, 598 S.W.2d 238, 249 (Tex. Crim. App. 1980),
cert. denied, 449 U.S. 1003 (1980). 
        The evidence did not show that Williams was an accomplice in this case. 
See Solomon, 49 S.W.3d at 362. The record shows that she did not assist in 
or encourage the commission of the crime and that she was never charged as 
being an accomplice, but only washed out appellant’s jacket after the crime 
was committed. Therefore, her testimony could be used as corroboration. Id. 
Moreover, the credibility of a witness is an issue for a jury to decide, and 
credibility attacks on a witness do not defeat the corroborating effect of the 
witness’s testimony. Id. The Court of Criminal Appeals has rejected such 
attempts to superimpose a legal or factual sufficiency review upon the 
accomplice-witness standard. Id. Therefore, the non-accomplice evidence 
sufficiently corroborated Hornsby’s testimony. 
C. Evidence Supporting Conviction 
        In reviewing the legal sufficiency of the evidence to support a conviction, 
we view all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 
608, 612 (Tex. Crim. App. 2001). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh 
the evidence, and to draw reasonable inferences from basic facts to ultimate 
facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When performing a legal 
sufficiency review, we may not sit as a thirteenth juror, re-evaluating the 
weight and credibility of the evidence and, thus, substituting our judgment for 
that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. 
App. 1999), cert. denied, 529 U.S. 1131 (2000). The standard of review is 
the same for direct and circumstantial evidence cases. Burden, 555 S.W.3d at
613; Kutzner, 994 S.W.2d at 184.
        Here, the evidence shows that (1) appellant was looking for a car to steal; 
(2) he went to the carwash to steal Lerma’s car; (3) he shot and killed Lerma; 
and (4) he drove away in Lerma’s car and later removed parts to sell. Because 
the evidence shows that appellant intentionally killed Lerma while in the course 
of robbing him, we hold the evidence is legally sufficient to support his capital 
murder conviction. See Tex. Penal Code Ann. § 19.03(a)(2). We overrule 
appellant’s third issue. 
V. CONCLUSION 
        Having overruled appellant’s issues on appeal, we affirm the trial 
court’s judgment.  
 
 
                                                          SAM J. DAY 
                                                          JUSTICE
 
PANEL A:   CAYCE, C.J.; GARDNER, J.; and SAM J. DAY, J. (Retired, 
Sitting by Assignment). 
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 4, 2003